## Case No. 6,279.

### HAZARD v. HAZARD.

[1 Story, 371.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1840.

PARTNERSHIP — THIRD PERSONS — OPERATION OF LAW—PARTICIPATION IN PROFITS—AGENCY.

1. A partnership, as to third persons, may arise by mere operation of law, and without the intention of the several parties thereto; but the actual intention of the parties will alone constitute a partnership as between themselves.

[Cited in Parchen v. Anderson, 5 Mont. 438, 5 Pac. 588; Northrup v. Phillips, 99 Ill. 453.]

2. A mere participation in the profits will not make the parties partners inter sese.

[Cited in Seymour v. Freer, 8 Wall. (75 U. S.) 222.]

3. Quaere, whether there is any clear and solid distinction between cases, which constitute partnership, as to third persons, by participation in the profits, and cases of mere agency, where the remuneration is to be paid by a portion of the profits.

[Cited in Rodgers v. Meranda, 7 Ohio St. 179; Hastings v. Hopkinson, 28 Vt. 112.]

4. Under the circumstances of this case, where one third for one year and one fourth for another year, of the profits in a certain business carried on by A and B, was allowed to B, for his services, it was held, that there was no partnership, but a mere participation of interest in the profits, as a remuneration to B for his agency.

[Cited in Bigelow v. Elliot, Case No. 1,399.]
[Distinguished in Bentley v. Harris, 10 R. I. 435. Cited in State v. Shaeffer, 89 Mo. 275, 1 S. W. 293.]

Bill in equity for the settlement of the accounts of an asserted partnership between the plaintiff [Thomas R. Hazard] and the defendant [Benjamin Hazard], and for a decree for payment of the balance due to the plaintiff, &c. The answer denied the partnership, and stated expressly, that no partnership was intended between the parties; but that the defendant was, by an informal written instrument, annexed to the bill, and which was admitted to be the true agreement between the parties to have a certain portion of the profits of the business in lieu of, and as a compensation for, his services. The written instrument was not signed; but was in the following terms, and was in the handwriting of the defendant: "Benjamin Hazard agrees with Thomas R. Hazard to run his two factories situate on Rocky Brook, on the following terms, viz. The said Benjamin Hazard agrees to devote his whole time, excepting his attendance of religious meetings, exclusively to the management of the concerns of said factories, and to take the machinery in the order it is at present in, and return it in like order, at the expiration of this agreement. In consideration of which, the said T. R. Hazard agrees to allow him one fourth of the profits of the business, for the first year, and one third of the profits

¹ [Reported by William W. Story, Esq.]

for each year after, until the expiration of this agreement, which is to be the sole reward of the said B. Hazard's services. And Thomas R. Hazard agrees, on his part, to purchase the stock and attend to the sale of the goods, without any charges for his personal services and time, excepting the actual expenses, necessarily incurred. All stock and articles of any description, bills, &c. paid by Thomas R. Hazard, are to be credited to the said T. R. H., and the proceeds of the goods are to be delivered and charged to him, in the factory books. And the said Thomas R. Hazard agrees to furnish a horse and wagon, to do the business of the factory, which is to be kept at the expense of the factory, and returned of equal value, at the expiration of this agreement. It is to be understood, that Benjamin Hazard is to have no control over, or profits arising from the rents, &c. of the houses and lands adjoining the factories. Thomas R. Hazard is to charge no rent for the factories, which, with the dam, water-wheels, running gear, &c. is to be kept in running repair, and the expense charged to the factory." The agreement has no date, but it is admitted, that it was made in December, 1825, and the factories were carried on under it for four years, until about December, 1829. The business being then found unprofitable, it was discontinued by the consent of both parties.

The general replication was filed; and the parties having taken evidence on each side, the cause came on for a hearing.

Benjamin Hazard, for Thomas R. Hazard.
R. W. Greene and A. C. Greene, for defendant.

STORY, Circuit Justice. In the view which I take of this case, it is wholly unnecessary to go into the examination of several collateral matters, which are stated in the bill and answer and evidence, and which have been adverted to at the argument. The only question, which it appears to me is now before the court for consideration. is, whether under and in virtue of the informal agreement, in December, 1825, there was constituted a partnership between the parties for carrying on the factories. If there was, then there ought to be an interlocutory decree for an account. If there was not, then the bill ought to be dismissed, for although in positive terms it does not (as doubtless it ought) aver a partnership, yet the whole structure and frame of the bill is formed to this aspect of the case, and the bill would be unintelligible without it. Now, upon the point, whether there was a partnership or not between these parties in the factory business, under the agreement, it is necessary to take notice of a well known distinction between cases, where, as to third persons, there is held to be a partnership, and cases where there is a partnership between the parties themselves. The former may arise between the parties by mere operation of law against the intention of the parties; whereas,

the latter exists only when such is the actual intention of the parties. Thus, if A and B should agree to carry in any business for their joint profit, and to divide the profits equally between them, but B should bear all the losses, and should agree, that there should be no partnership between them; as to third persons dealing with the firm, they would be held partners, although inter sese, they would be held not to be partners. This distinction is often taken in the authorities. It was very fully discussed and recognized in Waugh v. Carver, 2 H. Bl. 235; Cheap v. Cramond, 4 Barn. & Ald. 663; Peacock v. Peacock, 16 Ves. 49; Ex parte Hamper, 17 Ves. 404; Ex parte Hodgkinson, 19 Ves. 291; Ex parte Langdale, 18 Ves. 300; Tench v. Roberts, 6 Madd. 145, note; Hesketh v. Blanchard, 4 East, 144; Muzzy v. Whitney, 10 Johns. 226; Dob v. Halsey, 16 Johns. 34.

The question before us is, not as to the liability to third persons; but it is solely, whether between themselves the agreement was intended to create and did create a partnership. I have looked over the agreement carefully, and my opinion is, that no partnership whatsoever was intended between the parties; but that Benjamin Hazard was to be employed as a mere superintendent, and not as a partner, and was to be paid the stipulated portion of the profits for his services as superintendent. This, it is said, in the agreement, was to be the sole reward of his services; and, if there were no profits, then he was to submit to lose the value of his services. It is not any where said in the agreement, that the parties are to be partners in the business; nor that Benjamin Hazard is to pay any part of the losses. But language is used, from which, I think, it may fairly be inferred, as the full understanding of the parties, that the whole capital stock was to be held by T. R. Hazard, as his sole and exclusive property, and that the stock was to be furnished by him, and the proceeds thereof were to be delivered and sold by him, and charged to him, as his individual property, and debts and credits. Now, if this be so, there is no pretence to say, that the parties intended a partnership. A mere participation in the profits will not make the parties partners inter sese, whatever it may do as to third persons, unless they so intend it. If A agrees to give B one third of the profits of a particular transaction in business, for his labor and services therein, that may make both liable to third persons as partners; but not as between themselves. This was the very point adjudged in Hesketh v. Blanchard, 4 East, 144, where Lord Ellenborough said: "The distinction taken in Waugh v. Carver and others, applies to this case. Quoad third persons it was a partnership, for the plaintiff was to share half the profits. But, as between themselves, it was only an agreement for so much, as a compensation for the plaintiff's trouble and for lending R. his credit." The same doctrine was fully recognized in Muzzy

v. Whitney, 10 Johns. 226. It is not necessary in the present case, to decide, whether Benjamin Hazard was, under the agreement, a partner as to third persons. That question may be left for decision, until it shall properly arise in judgment. And before it is decided, it might be necessary to examine a very nice and curious class of cases, standing, certainly, upon a very thin distinction, if it is a clearly discernible distinction, between cases of partnership, as to third persons, and cases of mere agency, where the remuneration is to be by a portion of the profits. This distinction is alluded to by Lord Eldon, in Ex parte Hamper, 17 Ves. 404, and by Lord Chief Justice Abbott in Cheap v. Cramond, 4 Barn. & Ald. 663, 670. In the latter case, the chief justice said: "Such an agreement is perfectly distinct from the cases, put in the argument before us, of remuneration made to a traveller, or other clerk or agent, (in proportion to the profits,) by a portion of the sums received by the master or principal, in lieu of a fixed salary, which is only a mode of payment adopted to increase or secure exertion." It was also acted upon in Muzzy v. Whitney, 10 Johns. 226; Dry v. Boswell, 1 Camp. 329; Wish v. Small, Id., note; Benjamin v. Porteus, 2 H. Bl. 590; Wilkinson v. Frasier, 4 Esp. 182; and Mair v. Glennie, 4 Maule & S. 240, 244.

My judgment is, that in the present case the parties never intended any partnership in the capital stock; but a mere participation of interest in the profits; and that the one third or one fourth of the profits allowed by the agreement to Benjamin Hazard, was merely a mode of paying him as agent for his superintendency of the factories. In this view, I think, the bill ought to be dismissed with costs.