Sutliff, J.
This is an action of assumpsit commenced at the October term, 1850, in the common pleas of Hamilton county, by Wood & Oliver, against Henry Yallette and Harry Lewis.
The declaration charges, that on the 28th day of March, 1845, the defendants “ were partners in trade under the name of ‘ H. Lewis;”’ and so being partners, on that day executed to the plaintiffs their certain promissory note in writing of the following tenor, to wit:
*“552 62-100.
“Philadelphia, 28th March, 1845. Six months after date, I promise to pay to the order of Wood & Oliver, five hundred and fifty-two dollars 62-100, without defalcation, for value received.
(Signed,) ■ “ H. Lewis.”
*156 Yallette pleaded the general issue, with his affidavit of its verity. Lewis made no defense. The cause was tried at the June term, 1852, of the common pleas, and resulted in a verdict and judgment in favor of the plaintiffs.
Yallette appealed to the district court. At the October term, 1855, of the district court, the cause was again tried to a jury, who returned a verdict against the defendants for the amount due on the note. Thereupon the defendant moved for a new trial for the alleged causes:
1. That the verdict was contrary to the evidence.
2. That the court erred in its charge to the jury.
Eor the determination of this motion the cause was reserved to this court.
Upon the trial in the district court a bill of exceptions was taken by the defendant, from which it appears that the plaintiff, after proof of its execution by the defendants, offered in evidence a written contract of the tenor following:
“ This agreement made this twentieth day of September, 1844, between H. Yallette and Harry Lewis, in Cincinnati, witnesséth— That the said Yallette agrees to loan to the Lewis, one thousand dollars, and draw for the same in merchandise as he may want it for the payment of his contractors on the White Water Yalley Canal in the State of la. The said Yallette agrees to use his influence in procuring for the said Lewis the patronage of his contractors on the said canal, now at work for the said Yallette. In consideration of the foregoing, said Lewis agrees to pay said Yallette in merchandise half of the profits made in his store, or in any -other store that may be established on the line of the canal by said Lewis in the ensuing twelve months after the date of this agreement, said profits to be paid by dividing the most unsalable portion ■of the merchandise said Lewis may have on hand at the end of twelve months from this time; the business to be conducted in the name of said Lewis. Said Lewis agrees to take an account of stock and keep his books from the 5th of October, 1844, so as to be able to .arrive at an exact account of the profits of the concern for twelve months thereafter. It is understood that said Yallette shall not be responsible for any loss connected with the concern more than the profits thereof, and that nothing shall be ^construed, or intended in this agreement to make a partnership between said Lewis and said Yallette.
(Signed,) “ Henry Yallette,
“Harry Lewis.”'
The defendant objected to the giving of the writing in evidence, *157 but the court overruled the objection and permitted the writing to go in evidence to the jury; and defendant excepted.
The bill of exceptions also shows that the court refused, upon request of defendant, to instruct the jury that said writing did not constitute an agreement of copartnership, and did not make Val lette liable to the plaintiffs as a secret partner, for goods bought by Lewis; but on the contrary, that the court charged the jury that the writing, so given in evidence, did constitute a partnership between Vallette and Lewis as to creditors who sold goods to Lewis, and took his note while said agreement existed.
The motion for a new trial is predicated upon these holdings and charge of the court. If the court erred in permitting said written agreement to be given in evidence, or, if the court erred in their instructions to the jury in regard to the legal effect of that instrument, to the prejudice of the defendant, a' new trial ought to be granted. If, however, the court committed no error in either of these particulars, no other ground for the motion being stated, a new trial ought not to be granted.
The only question, therefore, in this case for our consideration, is the legal effect of this written agreement.
Did it constitute a partnership between the defendants, “ as to creditors who sold goods to Lewis and took his notes, while said agreement existed ?” Does the writing indicate an agreement between Lewis and Vallette, to respectively put their mony, effects, labor, and skill,, or some or all of them together, in lawful commerce or business, with the understanding, express or implied, that there should be a communion of profits thereof between them ? If so, the charge of the court was correct; otherwise, it was not, and a new trial should be granted.
The instrument of writing provides, in express terms, that Val_ lette shall loan Lewis one thousand dollars, and draw for the same in merchandise as he may want it, and shall use his influence to' ^procure certain patronage to the store; and that Lewis shall, on his part, prepare books, take an account of stock, and enter upon the management of the business within about fifteen days thereafter, and conduct the business for one year; and that the parties shall then, upon an account being taken, divide the profits equally between them. Now here is an express agreement that Vallette shall advance $>1,000 on his part; I say advance, for it is a misnomer to term it a loan, when the stipulations of the *158 parties are, that, instead of thereafter receiving back the ®1,000 in kind, in money, Yallette is to draw one thousand dollars worth of goods therefor from the store. Yallette also agrees to contribute his labor, skill, or influence to procure . certain patronage to the store. Lewis,'on his part, puts in his labor and skill in conducting the business. And the writing provides that Yallete, in consideration of his said advancement, and services in procuring patronage, ¡should receive half of the profits made in the enterprise. As between the parties to the agreement, these provisions are sufficient, it can not be doubted, to constitute a partnership inter sese.
But the concluding paragraph provides, that it is understood that said Yallette shall not be responsible for any loss more than the profits in the enterprise; and that the writing shall not be regarded as constituting a partnership between the parties to it.
This concluding paragraph may very essentially qualify the effect •of the instrument as between the^ parties. It can not, however, .affect the character of the contract so as to change the relation of the defendants, otherwise thereby established, toward third persons. 'The provision, that nothing in the agreement shall be construed or intended to make a partnership, and the provision that Yallette ¡shall not be responsible for losses to exceed the profits, are provisions strictly inter sese.
“ It may be laid down as a general rule of the common law,” ¡says Judge Story, “ that in order to constitute a partnership, it is not essential that the parties should equally share the profits and losses. It is sufficient if they are to share in the profits of the business after deduction of the losses; or in other words, that they .should share in the net profits according to their respective proportions. *It is therefore competent for the partners, by their ¡stipulations, to agree that the profits be divided, and if there be no profits, but a loss, that the loss shall be borne by one or more of •the partners exclusively, and that the others shall, inter sese, be •exempt therefrom.”
The elementary writers seem generally to understand the doctrine to be that a community of profits between parties should determine the question of partnership.
Mr. Oollyer, in his treatise upon the subject of partnerships, uses ■the following language: “To constitute a partnership between the partners themselves, there must be a communion of profit between them;” and adds that the communion of profit implies a commu *159 uion of loss. But he, too, admits the right of the parties to stipulate, as between themselves, for the exemption of any member of the partnership from any loss beyond the profit.
It would therefore, we apprehend, be difficult, upon authority, to find that this agreement of the parties has not all the requisites of a partnership contract, as between the parties themselves. It is even questionable if, in this case, there might not be, by virtue of ■this contract, not only the community of profits necessary to entitle each to an account, as provided for by the instrument, but also, by reasonable implication, a community of property between the parties.
Suppose, instead of a provision that Yallette should advance one •thousand dollars, the instrument had contained a provision that he should advance ten thousand, or all the money necessary for the purchase of the entire stock of goods, and to be drawn for in merchandise, the provisions of the contract in all other respects being the same. If Lewis, under such circumstances, had received and invested the money in the purchase of goods, and the goods had been seized in execution for the satisfaction of some former private debt against Lewis, it might be very reasonably expected that Yallette would assert a community of property in the goods, and insist upon his right by virtue of his having so advanced the purchase money. If Yallette could, under such ^circumstances, suecessfully assert a claim in the goods, it would be upon the ground of a partnership, in fact, between themselves.
But it is not necessary, in this case, to find that the writing under consideration constituted a partnership inter sese, between the parties. The question is, does the legal effect of the contract constitute the defendants partners, toward third persons dealing and becoming creditors, within the limits of the enterprise?
There is a well-known distinction between cases in which it has been held that as to third persons there is a partnership, and the eases in which it has been held that there is a partnership between the parties inter sese. The former may arise by more operation of law, and the partnership exist, as to third persons, even against the express intention of the parties. Thus, in the case of Hazard v. Hazard, 1 Story, 371, it was said by the court, that if A and B should agree to carry on business for their joint profits, and to divide the profits equally between them, but B should bear all the losses, and should agree that there should be no partnership between them, as to third persons dealing with the firm, they would *160 "be held to he partners, although inter sese they would be held not. to be partners. This distinction is often taken in the authorities.. It was very fully discussed and recognized in Carver v. Waugh, 2 H. Ela. 235; and many other cases, English and American, are referred to by the court, fully sustaining the doctrine.
There is still another, and more nice distinction between the cases-were a participation in the profits will make a man liable as a partner to third persons, and the cases where it is held that a person, may stipulate to receive as a reward and compensation for his services, a sum of money in proportion to the profits. Mr. Grow, in treating upon the subject, states the distinction to be between an interest in the profits themselves as profits, and the payment of a given sum of money proportioned to the profits. And Lord Eldon, in Ex parte Kowlardson, 1 Rose, 89, said: “ If a man, as a reward for his labor, chooses to stipulate for an interest in the profits of a business, instead of a certain sum proportioned to those profits, he is, as to-third persons, a partner; and no arrangement between the parties-themselves *can prevent it.” Chancellor Kent, in his Commentaries, vol. 3, p. 25, note b, recognizes the same distinction. The following is his language: “ There is a distinction between a stipulation for a compensation* for labor proportioned to the profits, which will not make a person a partner, and a stipulation for an interest in such profits, which entitles the party to an account as a partner.”
Indeed, wo apprehend, the rule is at this time well settled, that, even an agent can not stipulate with his employer to receive an interest in the profits, other than of gross profits, as a remuneration for his services, without thereby becoming a partner as to third persons. -If the contract be, that he shall receive for his compensation a certain portion of the net profits, the agent would thereby become a partner as to third persons.
We think, in this case, there can be no doubt that the contract between the defendants, in its legal effect, constituted them ¡partners-as to third persons dealing with them under the existence and operation of the contract.
The motion for a new trial must therefore be overruled, and judgment entered on the verdict.
Bartley, C. J., and Swan, Brinkerhoee, and Scott, JJ., concurred.