Parker *v.* Canfield.

## SUPREME COURT OF ERRORS.

## NEW HAVEN AND MIDDLESEX COUNTIES.

### SEPTEMBER TERM, 1870.

### Present,

BUTLER, C. J., PARK, CARPENTER, FOSTER, AND SEYMOUR, Js.

### AUGUSTUS PARKER *vs.* JARED H. CANFIELD AND OTHERS.

Participation in the profits of a business is primâ facie strong evidence of a partnership in it.

And this rule applies to a party who receives a sum equal to a certain share of the profits, as well as to a party receiving such share of profits by the name of profits.

There are cases however where money received may properly be regarded as a sum measured by profits rather than as profits themselves; but whether they shall be so regarded depends upon no arbitrary use of phrases, but upon the nature of the contract, and the real consideration upon which the money is received. Thus a share of profits paid to agents to secure exertion does not constitute such a participation in profits as to make the agent liable as partner.

If a party is to receive profits in consideration of furnishing capital he is clearly a partner; and is a partner as to third persons even though it should be stipulated that the capital so furnished should be regarded as a loan and the party furnishing it a mere creditor.

*A* being engaged in a certain business, it was agreed between him and *C* and *H*, that *C* and *H* should put the sum of $10,000 into the business and receive together one-third of the net profits, that the business should be under the sole management of *A*, and that the arrangement should continue three years. All the parties expected that large profits would be made. After the money had been advanced and the business had been prosecuted for a short time under the arrangement, the parties applied to an attorney to draw a contract in accordance with the agreement, and were advised by him that the arrangement would make *C* and *H* partners with *A*. It was thereupon agreed that the money advanced by *C* and *H* should be regarded as a loan to *A*, and *A* executed two notes of $5,000 each to *C* and *H* severally, with annual interest, the principal payable at the end of the three years, and *A* signed an agreement with each that in consideration of their trouble and expense in procuring for him the money loaned, he would keep an accurate account of the profits of the busi-

ness and pay each of them such sum annually as with the interest should be equal to one-sixth of the annual net profits; *C* and *H* to have no interest in the profits of the business as profits, but only as compensation for time and expense in procuring the loan.   Held that *C* and *H* were to be regarded, as to others, as partners with *A* in the business, and liable for the debts incurred by him in the prosecution of it.

The taking of a renewal note from a party who has dormant partners, after the termination of the partnership, where taken without any intention to discharge the dormant partners, does not discharge the claim against the copartnership.

ASSUMPSIT against the defendants as partners under the name of H. O. Andrews, upon sundry notes executed in that name, with the common counts; brought to the Superior Court in New Haven County. The following facts were found by a committee.

The defendants were Henry O. Andrews, Jared H. Canfield and Hiram Hutchinson. Hutchinson resided out of the state and no service was made upon him. Canfield alone appeared and made defence. The principal question in the case was, whether the defendants were partners at the time when the plaintiff's claim accrued.

Early in the year 1865 Andrews was engaged in the cider trade in the city of New Haven. Canfield proposed to invest money in the business. Andrews was anxious that he should do so, and the terms and manner of investing were subjects of frequent discussion between them during the summer and autumn of that year. They at first talked of forming a limited partnership, under the statute, but that plan was abandoned. Andrews desired that Canfield should invest in the business ten thousand dollars. Canfield was unwilling to invest so much, but early in the fall of 1865 he induced Hutchinson to furnish one half the required amount, and he agreed to furnish the other half. It was then agreed between them that Andrews should make an inventory of his stock in trade, and ascertain the amount of funds he had therein; that Canfield and Hutchinson should furnish the sum of ten thousand dollars; that the arrangement should continue until September 1st, 1868; that the business should be under the sole management and control of Andrews, and that Canfield and Hutchinson should receive one-third of the net profits. It

was further agreed that there should be an annual statement of the profits made, and that Canfield and Hutchinson were at liberty to draw out their share of the profits annually. From the time the idea of a limited partnership was abandoned, to the time counsel was consulted, as hereinafter stated, it did not appear that a partnership, in terms, was spoken of by the parties. All the defendants expected that large profits would be made, and so confident were they of this, that the possibility of losses seemed not to have occurred to them, and was not a subject of conversation between them. During all that time the money furnished, or to be furnished, was treated and regarded as capital, or money invested in the business.

Andrews completed his inventory about December 1st, 1865, and found that his assets, over and above his liabilities, amounted to the sum of $2,217.72, which was all the money he invested in the business.

Canfield furnished his portion of the funds as follows:

Jan. 4th, 1865, cash, $1,500 ; July 27th, cash, $300 ; Dec. 1st, balance of general account, due him from Andrews, $1,826.96 ; Jan. 8th, 1866, cash, $50 ; making $3,676.96. $1,300 was subsequently furnished in notes, and the balance, $20 and over, was never paid at all.

Hutchinson furnished, Nov. 17th, 1865, a check for $2,000 ; Dec. 29th, cash, $2,000 ; Jan. 4, 1866, cash, $800 ; Jan. 8th, cash, $200 ; making the whole $5,000.

The check for $2,000 was inclosed in a letter, written by Canfield to Andrews, dated Nov. 17th, 1865. Andrews returned a receipt for the same, bearing the same date. The letter and receipt were as follows :

"Meriden, Nov. 17, 1865. Mr. H. O. Andrews : Dear Sir. Inclosed please find Mr. H.'s check for $2,000. I wish you to send me a receipt saying that you have received it, and for what purpose the proceeds are to be applied. That is, that you have received $2,000 as part of $10,000 you are to receive jointly from us ; and as compensation we are to receive one-third of the profits of your business, commencing from October 1st, 1865. Yours truly, J. H. Canfield."

" Rec'd, New Haven, Nov. 17th, 1865, from Mr. H. Hutchinson for Mr. J. H. Canfield, two thousand dollars, as a part of ten thousand dollars to be furnished by said Hutchinson and Canfield, to be used in my business as agreed. H. O. Andrews."

It was understood by the defendants during their negotiations, that when the terms should be finally agreed upon, their agreement should be reduced to writing. Accordingly about the first day of January, 1866, Canfield applied to an attorney for that purpose. On stating the agreement, he was advised by counsel that it would make himself and Hutchinson partners. Thereupon it was agreed by the defendants that the money invested by Canfield and Hutchinson should be regarded as a loan, and the attorney was requested to prepare a writing which should secure to them one-third of the profits, without subjecting them to liability as partners. The papers below described were then prepared and executed. But there was no previous arrangement by the defendants, or conversation between them upon that subject, by which Canfield and Hutchinson were to receive six per cent. interest, and that the amount to be received by them was not to be received as profits, but as compensation for time, trouble and expense in procuring the loan. The writings expressed the real agreement between the parties, as understood by them at the time they were executed, in respect to interest, and that the amount to be received by Canfield and Hutchinson should not be received as profits but as compensation for time and trouble in procuring the loan, but they were not designed or intended to change the verbal agreement previously existing between them in any other respect.

The following is the written agreement executed by Andrews to Canfield, one of the same character having been made and delivered to Hutchinson.

" Meriden, Dec. 1, 1865. I, Henry O. Andrews, of the city and county of New Haven and state of Connecticut, hereby acknowledge that I have this day received of J. H. Canfield, of the town of Meriden, state of Connecticut, the sum of five thousand dollars, as a loan ; and I hereby agree with the said

J. H. Canfield that I will pay him interest upon the sum so loaned, annually, at the rate of six per cent. per annum, and that I will repay him the principal sum loaned within sixty days from Sept. 1st, 1868. And in consideration of the time, trouble and expense of said Canfield in procuring for me the money so loaned, I further agree with him that I will keep an accurate account of the annual net profits of the business, now carried on by me at No. 50 State street, New Haven, and that if one-sixth part of such annual net profits shall exceed the amount of such interest, I will pay him such further sum annually as, with said interest, shall be equal to one-sixth part of the annual net profits of my said business. It being specially provided and understood that said Canfield shall have no interest in the profits of my said business as profits, but simply as a compensation for the trouble, time and expense which he has been put to in procuring said money to loan me ; and that I am hereby estopped from denying that such trouble, time and expense are reasonably worth the amount which the said Canfield may receive under this agreement. Signed in duplicate. H. O. Andrews." [L. S.]

Both Canfield and Hutchinson aided Andrews from time to time during the continuance of the alleged copartnership, in procuring funds for the business, by loan of government bonds, and indorsing paper ; Hutchinson taking security by pledge of a portion of the stock in trade. No security was taken by either party for money furnished under the agreement. Nor was there any statement of profits earned, or payment of profits or interest to Canfield or Hutchinson. Andrews was requested to make the statement required, but failed to do so. Neither Canfield nor Hutchinson was ever held out to creditors, or others, as a partner, prior to the first day of January, 1869 ; but Andrews did represent to the plaintiff that other parties were aiding him, and that there was invested in the business the sum of $12,000 ; and that statement, in part, induced the plaintiff to give him credit. In the month of January or February, 1869, Andrews informed the plaintiff that he had partners, but did not disclose their names until April following, when the plaintiff first

learned of the previous expiration of the alleged copartner-ship. No profits were in fact made in the business, but on the contrary the money invested was all sunk, and the prose-cution of the business has resulted in a large indebtedness besides.

The defendant Canfield, who alone made defence, objected to all parol evidence of the foregoing facts so far as they con-tradicted the written agreement or tended to prove a different relation between himself and Andrews from that shown by the written agreement.

The claim of the plaintiff originated between January 8th, 1866, and September 1st, 1868, and was in part for money loaned to Andrews and used by him in the prosecution of his business and in part for money paid in taking up notes of Andrews at bank which were secured by a deposit of govern-ment bonds loaned by the plaintiff to Andrews for that pur-pose. The plaintiff's entire claim was about $12,000. A large part of this was evidenced by notes executed by Andrews alone, and which had been taken of him by the plaintiff after the termination of the partnership. But the new notes so taken were understood by the parties as taken in renewal of the old notes.

Upon the facts thus found the Superior Court reserved the case for the advice of this court.

*Watrous* and *Alling*, for the plaintiff.

*First.* The evidence objected to was strictly admissible. It was certainly the right of the plaintiff to prove the facts which he claimed, and for which he offered the evidence, and the evidence would have been admissible whether it proved the facts or not. *Pierson* v. *Steinmeyer*, 4 Rich. (So. Car.), 309.

*Second.* Upon the facts found, we claim that a partnership existed between the defendants.

1. On account of the participation in the profits by Canfield and Hutchinson.

It is said in the leading cases of *Waugh* v. *Carver*, 2 H. Bla., 235, and *Grace* v. *Smith*, 2 W. Bla., 9ъ8, which have been

recognized as law ever since in this country, that "he who takes a moiety of all the profits, indefinitely, shall by operation of law be made liable to losses, if losses arise, upon the principle that by taking a part of the profits he takes from the creditors a part of that fund which is the proper security for the payment of their debts." In this case Canfield and Hutchinson not only take a certain share of all the net profits, but they have the right and power to take the very capital itself, upon which the business is conducted, away from the creditors of the business. The authorities on this point are numerous and decisive in favor of the plaintiff. *Cushman* v. *Bailey*, 1 Hill, 526 ; *Ex parte Chuck*, 8 Bing., 469 ; *Cheap* v. *Cramond*, 4 Barn. & Ald., 663 ; *Bloxham* v. *Pell*, 2 W. Bla., 999 ; *Catskill Bank* v. *Gray*, 14 Barb., 471 ; *Buckner* v. *Lee*, 8 Geo., 285 ; *Bailey* v. *Clark*, 6 Pick., 374 ; *Wood* v. *Vallette*, 7 Ohio S. R., 172 ; *McDonald* v. *Millaudon*, 3 Louis., 255 ; *Sheridan* v. *Medara*, 2 Stockt., 478 ; *Dob* v. *Halsey*, 16 Johns., 34 ; *Oakley* v. *Aspinwall*, 2 Sandf., 21 ; *Cushman* v. *Bailey*, 1 Hill, 526 ; *Walden* v. *Sherburne*, 15 Johns., 422 ; *Everett* v. *Coe*, 5 Denio, 180 ; *Pierson* v. *Steinmeyer*, 4 Rich. (So. Car.), 313 ; *Bromley* v. *Elliott*, 38 N. Hamp., 302 ; *Brown* v. *Robbins*, 3 N. Hamp., 64 ; *Champion* v. *Bostwick*, 18 Wend., 183 ; *Bucknam* v. *Barnum*, 15 Conn., 67 ; *Everett* v. *Chapman*, 6 Conn., 347.

Canfield and Hutchinson, however, may claim that they can shelter themselves from liability, under the exception to the general rule, by which agents and servants, as compensation for services, can receive a certain share of the profits of a trade, without becoming liable as partners ; Canfield and Hutchinson claiming that they can receive each one-sixth of the net profits of this business, as compensation for the use of their money, without becoming liable to third persons as partners. The law in relation to agents and servants does not, however, exempt from liability when the so-called agent is really a principal, and only colorably and for the sake of avoiding liability an agent. *Perry* v. *Butt*, 14 Geo., 699 ; *Heyhoe* v. *Burge*, 9 Com. Bench, 431 ; *Wood* v. *Vallette*, 7 Ohio S. R., 172. The law allowing agents to receive shares

of profits as compensation for services, is based upon grounds of public policy, because it constitutes an incentive to extra exertion, and does not infringe upon the rights of creditors or the rules of public policy; since if there are profits the creditors get their pay, and are satisfied, and if there are no profits the agents get nothing. Besides such persons, acting ·always as agents, do not cause the giving of an unfounded credit by the public, whereas the possession and use of capital in trade always gives the possessor and user credit with the public, and public policy requires that that credit shall be well founded. *Pierson* v. *Steinmeyer*, supra. By some courts it has been held that such agent is liable to third persons. *Chase* v. *Barrett*, 4 Paige, 159; *Purviance* v. *M' Clintee*, 6 Serg. & R., 259; *Taylor* v. *Terme*, 3 Har. & J., 505; *Bromley* v. *Elliott*, 38 N. Hamp., 287. But while the exception to the rule may have been extended to cases of real agency, it has never been extended to the capitalist who has advanced money, under an agreement that it shall be used in a certain business, and who is to receive therefor a certain share of the indefinite profits, to be made out of that very business. Such capitalist has always been held to be a partner as to third persons. Parsons on Part., 143; *Lord* v. *Baldwin*, 6 Pick., 348; *Grace* v. *Smith*, 2 W. Bla., 998; *Pierson* v. *Steinmeyer*, 4 Rich (So. Car.), 319; *Catskill Bank* v. *Gray*, 14 Barb., 471; Story on Part., §§ 67, 68, 69; *Gilpen* v. *Enderby*, 5 Barn. & Ald., 954; 2 Am. Law Review, 1.

Private stipulations between parties, by which one is to receive a certain share of the profits of a business, but is not to be liable for losses, or even to the loss of his contribution to the capital, however binding *inter sese*, since they are not illegal, do not affect creditors, unless they have actual knowledge of such stipulations, or unless they have implied knowledge of such stipulations arising from well-known customs and usages of trade, such as seamen's right to profit in a whaling voyage, shipments to East Indies on half profits, and renting land on half shares. Parsons on Part., 41; *Everitt* v. *Chapman*, 6 Conn., 347; *Cox* v. *Hickman*, 8 House of Lords Cas., 268; *Oakley* v. *Aspinwall*, 2 Sandf., 21; *Gill* v. *Kuhn*,

6 Serg. & R., 333. But this is not a case of participation in profits for the use of money, but of a participation in the net profits for the express consideration of the voluntary and inconsiderable expenditure of time and trouble in procuring the loan. This was manifestly a mere sham to conceal a partnership liability. The exception to the rule of liability as a partner to creditors never has been and never will be applied to such a case as this. *Barry* v. *Nesham*, 3 M. G. & S., 641.

The clause in the receipts that Canfield and Hutchinson should have no interest in the *profits as profits*, will not avail to shield them from liability to third persons. *Bromley* v. *Elliott*, 38 N. Hamp., 307 ; *Barry* v. *Nesham*, 3 M. G. & S., 641. It is very evident, however, that Canfield and Hutchinson did have an interest in the profits of the business, in which their $10,000 was to be used, the receipts to the contrary notwithstanding. Neither Canfield nor Hutchinson understood that this clause made any difference in their method of prosecuting the business, or varied the profits they expected to receive. But the doctrine that a person must receive his share of the profits *as such*, in order to become a partner, has no application to a case like this. The rule affords a very good test as to whether an agent or servant, having a right to share in the profits, as compensation for services, is really such agent, or in fact a partner, and it is in the decisions in such cases that a doctrine of this sort is suggested.

2. We claim that a partnership existed by the general principles of agency.

By the unanimous opinion of all the judges in *Cox* v. *Hickman*, 9 Com. Bench, *N. S.*, 99, it was decided that the real test, whether a person sought to be charged as a partner was liable or not, was whether the business in which the claim arose was being done, in fact, on *account* or for the *benefit* of the party sought to be charged. The previous tests were not disregarded, but were deemed rather as evidential of the real test. The doctrine is not that the manager of the business must be the servant or agent of the alleged partner, but that, looking at all the facts of the case, and disregarding, if need

be, the private stipulations of the parties, the business must be found to be really done for the joint benefit of the alleged partner and actual manager. *Waugh* v. *Carver* is not reversed but sustained. · Now there cannot be the shadow of a doubt but that, in fact, Andrews carried on the business for the joint benefit of the three. Canfield and Hutchinson felt that it was so, and demanded an inventory in the first place, and from time to time statements of the progress of the business. It was for one-third of the net profits, to be made in the cider business, and no other, to be carried on and in fact carried on by Andrews, that Canfield and Hutchinson advanced and put in their $10,000, to be used, and which was used in that business, and Andrews for his services and capital took the other two-thirds of the net profits. The substance of this arrangement was never changed, nor pretended to be changed. *Bucknam* v. *Barnum*, 15 Conn., 73 ; *Hesketh* v. *Blanchard*, 4 East, 143 ; *Gouthwaite* v. *Duckworth*, 12 East, 422.

3. On general principles of public policy, and for the prevention of fraud upon innocent persons, Canfield and Hutchinson should be held liable to the plaintiff. *Chase* v. *Barrett*, 4 Paige, 159 ; *Winship* v. *Bank of U. States*, 5 Peters, 529 ; *Lea* v. *Guice*, 13 Sm. & Marsh., 657.

*Third.* The law is clear beyond dispute that no part of the plaintiff's claim was paid after the termination of the partnership, by taking the renewal note of Andrews. Parsons on Part., 388 and notes ; *Bill* v. *Porter*, 9 Conn., 23 ; *Pond* v. *Clarke*, 14 id., 334 ; *Smith* v. *Prince*, id., 472 ; *Clark* v. *Savage*, 20 id., 258 ; *Boswell* v. *Goodwin*, 31 id., 74 ; *Nichols* v. *Cheairs*, 4 Sneed, 229 ; *Robinson v. Wilkinson*, 3 Price, 538 ; *Chamberlin* v. *Madden*, 7 Rich. (*S. C.,*) 20; *In re Warren*, Daveis, 325 ; *Hill* v. *Voorhies*, 22 Penn. S. R., 68 ; Gow on Part., 194.

*O. H. Platt* and *D. B. Beach*, for the defendant Canfield.

*First.* The finding of the committee, " that the writings expressed the real agreement between the parties at the time they were executed," effectually disposes of the plaintiff's claim, that the real agreement was something else than the

written one; or, in other words, that the written agreement was a sham and a cover, and executed for the purpose of concealing an actual partnership between the parties. There is nothing in this case then to take it out of the well settled and wholesome rule, that where a contract is reduced to writing, parol evidence is inadmissible to contradict or vary it, and all previous parol negotiations are merged in it. "The true meaning of the rule excluding parol evidence is that such evidence shall never be used to show that the intention of the parties was directly opposite to what their language expresses, or substantially different from any meaning that the words they have used upon any construction will admit or convey." Fletcher, J., in *Barnet* v. *Union Mutual Fire Ins. Co.*, 7 Cush., 180. See also *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 Conn., 382.

*Second.* A partnership *quoad alios* is not created by the written agreement.

1. The supposed ground upon which the plaintiff predicates the technical liability of Canfield and Hutchinson to third persons is, that by the terms of their agreement they were to take a part of the fund on which the creditors relied for payment. But assuming that by the terms of the contract Andrews was to carry on business, keep an account of the profits, pay them at all events six per cent. interest on the money advanced, and in addition, what with the interest would amount to one-sixth of the net profits to each, the supposed test is not applicable, for the reason that, by the express terms of the agreement, Canfield & Hutchinson could in no event receive anything, or be entitled to receive anything, beyond their principal and six per cent. interest, until all the creditors of the alleged firm were paid. They had no specific lien or preference in payment over other creditors. They were to have their loan repaid, with six per cent. interest, irrespective of the question whether profits were made or not. They could claim their principal and interest, without any account of profit or loss being taken. It is not made to depend on the performance of any other stipulations in the agreement. It is payable in any contingency, and there

is not, necessarily, any community of capital or of profit and loss involved in the agreement. This element is indispensable when a dormant partner, unknown to the world, is sought to be charged with liabilities incurred by the ostensible partner. Collyer on Part., §§ 40, 44, and note; Cary on Part., § 11; Parsons on Part., 71, 92; *Loomis* v. *Marshall*, 12 Conn., 69; *Denny* v. *Cabot*, 6 Met., 82; *Green* v. *Beesley*, 2 Bing. N. C., 108; *Rice* v. *Austin*, 17 Mass., 197. Bisset, a late writer on the subject, lays down a plain and intelligible rule on the subject, which is quoted in Collyer on Partnership, p. 39, note. It is that wherever the agreement is that the party sought to be charged is to have a stipulated portion of the profits as a compensation for his labor or the use of the money advanced, and not a specific interest in the business or profits *as such*, a liability as a partner is not created. *Loomis* v. *Marshall*, 12 Conn., 78, 79.

2. But the test of liability as a partner, sought to be applied, is not the correct one. The proper test is, whether the person by whom the trade was actually carried on, conducted it in the capacity of agent for the party sought to be charged. And where there has been no actual participation of profits, where the party sought to be charged has not been held out, nor held himself out, as a partner or principal, bound by the acts of his agent, where no credit has been given on the faith of his being a partner, and where his conduct has not in any way operated as a fraud or deceit upon third persons, there should be no partnership as to third persons, and such is the doctrine of modern judicial and text authority. Neither Canfield nor Hutchinson authorized, or intended to authorize Andrews to bind them, or either of them, in any contract he might make. Neither of them has ratified any act of his in which they were interested. The contract, fairly interpreted, does not indicate that Andrews was to carry on business for himself, Hutchinson and Canfield, but only for himself. Story on Part., §§ 1, 49. *Wheatcroft* v. *Hickman*, 9 Com. Bench, N. S., 47. Same case, 8 H. L. Cases, 268. In the last case Lord Cranworth says: " I can find no case in which a person has been made liable as a dormant or sleeping partner,

in which the trade might not fairly be said to have been carried on for him, together with those ostensibly conducting it; and when, therefore, he would stand in the position of principal towards the ostensible members of the firm." In the case of *Bullen* v. *Sharp*, 18 Com. Bench, N. S., 614, the judgment of the court turned upon the operation of a deed of marriage settlement, all the judges holding that the agreement there set out, almost identically like the one in question, would not constitute a co-partnership. Same case reviewed, Law Reps., 1 Com. Pleas, 86.

3.   The plaintiff cannot stand on his alleged co-partnership of Andrews, Hutchinson and Canfield, under the firm name of H. O. Andrews.   There is no *joint* agreement between them to share with *each other* profits.   There is no community of profits between the three.   Canfield and Hutchinson stand related to each other in no way.   Andrews's obligations to them, respectively, are diverse.   There is no agreement between the three as to their respective share of the profits, as that Canfield have one-sixth, Andrews five-sixths, or that Canfield have one-sixth, Hutchinson one-sixth, Andrews four-sixths.   Suppose Andrews had borrowed money of a dozen different individuals and made with each just such an agreement as this, could they all be held as partners with Andrews, Canfield and Hutchinson ?   Can Canfield call Hutchinson to an account if Andrews should pay Hutchinson more than his share of percentage on money advanced, or *vice versâ* ?

*Third.*   But let us assume that a dormant partnership was created, with Andrews as the acting and known partner, and Hutchinson and Canfield as the silent and unknown members ot the firm " H. O. Andrews."   The alleged partnership expired Sept. 1, 1868, or at the latest Nov. 1, 1868.

1,   Neither Canfield nor Hutchinson is liable for any acts or engagements of Andrews subsequent to that time, and no notice of the expiration of the arrangement or dissolution of the alleged co-partnership was necessary to relieve them from liability, because the world had no knowledge of the connection, and the plaintiff particularly dealt throughout with Andrews alone, and in entire ignorance, until long after the

liabilities which form the immediate subject of this action were incurred by Andrews, of any connection existing between him and the parties now sought to be charged. The dormant partner is liable, if at all, not because he intended to become so, but because during the term of the connection he is receiving the emoluments and profits of the business. If he receive no emoluments or profits why is he liable? At the expiration of the connection his liability ceases, because third persons never trusted to his credit, and no customer or creditor was disappointed or misled if he silently withdrew from a firm of which he was never known to be a member. The doctrine of fair dealing would make Canfield liable if he had held himself out as responsible for Andrews's acts, but under the circumstances of this case he is clearly exempt from liability on all the contracts which are sought to be enforced in this action.   Collyer on Part., § 536; Story on Part., § 159; 3 Kent Com., 68; *Evans* v. *Drummond*, 4 Esp., 89; *Kelley* v. *Hurlburt*, 5 Cowen, 534; *Heath* v. *Sansom*, 4 Barn & Adol., 172; *Brooke* v. *Enderby*, 2 Brod. & Bing., 70; *Jones* v. *Shears*, 4 Ad. & El., 832; *Carter* v. *Whalley*, 1 Barn. & Adol., 11; *Grosvenor* v. *Lloyd*, 1 Met., 19.

2.   The fact that the contracts made and the liabilities incurred by the ostensible partner remaining in business were by way of continuation or renewal of old contracts entered into while the right to participate in profits existed, does not relieve the plaintiff from his dilemma, or subject the retiring dormant partner to liability; because the ground on which one partner in a firm has a right, after dissolution, to bind his former partner as to creditors who have received no notice of dissolution, is that the creditor is justified in concluding that the partnership continues, and to bestow faith and confidence in the partnership name as before dissolution, in consequence of that belief.   3 Kent Com., 68, note *d*; Story on Part., § 160; *National Bank* v. *Norton*, 1 Hill, 572, 578; *Marlett* v. *Jackman*, 3 Allen, 287; *Abel* v. *Sutton*, 3 Esp., 108; *Kilgour* v. *Finlyson*, 1 H. Bla., 155; *Newmarch* v. *Clay*, 14 East, 239; *Lusk* v. *Smith*, 8 Barb., 570; *Lansing* v. *Gaine*, 2 Johns., 300; *Warren* v. *Ball*, 37 Ill., 76.

3. No act or word of Canfield or Hutchinson is shown indicative of their consent to or approbation of Andrews's continuation of the business of the alleged partnership after the 1st of September, 1868. They were entirely ignorant of his renewal of old obligations. Andrews carried on the business exclusively. They cannot be held liable for his acts or intentions after the dissolution of the alleged partnership, unless they participated in or were privy to them, or did something by way of authority or ratification. Such authority or ratification was deemed essential by the court in *Roberts* v. *Ripley*, 14 Conn., 549. See also *Tillotson* v. *Tillotson*, 34 Conn., 367.

SEYMOUR, J. During the year 1865 the defendants Canfield and Hutchinson became interested in the business which the defendant Andrews was engaged in at New Haven. From time to time during that year they furnished him with money as capital under an arrangement that they, Canfield and Hutchinson, should each furnish $5,000, and that they each should have one-sixth of the net profits, and that the arrangement should continue till September 1st, 1868. The affairs of the company were to be under the management of Andrews, and carried on in his name. The details of the contract were however not fully arranged, and it was always understood that the agreement, when its terms were fully settled, should be reduced to writing.

In January, 1866, counsel was applied to to draw the papers and the parties then learned that their agreement would make them partners. Thereupon it was agreed by the defendants that the money invested by Canfield and Hutchinson should be regarded as a loan, and the attorney was requested to prepare a writing which should secure to them one-third of the profits without subjecting them to liability as partners.

The writings, which are set forth at length in the committee's report, were accordingly prepared and executed.

The defendants while acting under their verbal agreement were clearly partners, both *inter se* and as to third persons. But the plaintiff's debt arose from moneys furnished to An-

drews while he was carrying on the business under the writings, and by the written agreement the relation of the defendants to each other was materially changed. They were no longer partners *inter se*, and if chargeable at all, the defendants Canfield and Hutchinson are chargeable only as dormant partners.

The plaintiff claims that parties participating in the profits of a business are in general subject to the debts contracted in the prosecution of that business, and that Canfield and Hutchinson were under the written agreement, as well as under the verbal arrangement, to participate in profits in such manner as to fall within the operation of the general rule. The defendants earnestly deny these claims of the plaintiff.

The sharing in the profits of a business was formerly regarded as decisive to charge the party so sharing with liability as partner as to third persons ; but the modern cases admit of exceptions to the general rule, and the defendants contend that the exceptions have in truth subverted and supplanted the rule, so that now the mere participation of profits is no ground whatever for charging the participant as a dormant partner. On this point we cannot adopt the views of the defendants. The rule itself is firmly established as part of the common law of England and has been generally recognized as law in this state. We concede that the rule is subject to important exceptions, the principal of which is that of servants and agents, who are permitted to receive a certain percentage of the profits of a business as compensation for their services in that business. This exception was adopted in Connecticut in a nicely balanced case, that of *Loomis* v. *Marshall*, 12 Conn. R., 69. The court deemed it ' a matter of public policy that enterprising citizens who possess industry and skill, but are without capital, might be employed for a compensation proportioned to the avails of their labor and skill, without involving themselves and their employers in the responsibilities of partnership."

In this class of cases the agent receives what is termed a commission on the profits, as a mode of payment adapted to secure and increase exertion.

This distinction between profits received as such by a principal, and profits received by an agent as compensation for services, is nice and sometimes difficult of application, but is fully established.

There are other cases where compensation from a share of profits has been allowed for other benefits than services of an agent, in which, under the idea that public policy required the exception and that creditors are not injured but rather benefited by it, such sharing of profits has been held not to incur the liability of a partner; as in the case of *Perrine* v. *Hankinson*, 6 Halsted R., 181, where one received by way of rent a portion of the profits of a tavern.

But, notwithstanding these exceptions, we think the general rule remains beyond dispute, that participation in the profits of a business is *primâ facie* strong evidence of a partnership in it.

But the defendants say that even if the general rule be as we have stated it, Canfield and Hutchinson do not come within its operation, for they say that they were not to participate in " the profits," but by the express terms of the written agreement were merely to receive " a sum equal to the profits," not as profits, but simply as compensation for their services in procuring the loan for Andrews. This point, and points immediately connected with it, were strongly urged in argument and have been carefully examined.

In *Waugh* v. *Carver*, 2 H. Bla., 235, and in the cases following the authority of that case, the rule and the reason of it are briefly expressed in the language of Justice DeGrey: " By taking part of the profits he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts." Now it can make no difference with creditors whether a sum equal to a certain share of the profits is taken, or the same share of the profits is taken *eo nomine*. The fund on which the creditors rely is affected to the same extent and in the same manner, under the one form of expression as under the other.

The rule and reason of it as expressed by Justice DeGrey, have been much discussed by judges and lawyers. Judge

Story questions the original justice and wisdom of the rule, but admits its binding authority subject to certain established exceptions, and suggests that the rule is one of evidence, and that " admitting that a participation in the profits will ordinarily establish the existence of a partnership between the parties in favor of third persons in the absence of all opposing circumstances, it remains to be considered whether the rule ought to be regarded as anything more than presumptive proof thereof and liable to be repelled and overcome by other circumstances." Story on Partnership, § 38.

Judge Story's view of the matter when extended comes to this, that participation in the profits of a business is high evidence that the party thus participating is really and in truth interested in the business itself as principal, and that the party in whose name the business is done is really agent of the parties receiving the profits, and that a party who receives a share of the profits of a business may in general justly be considered one of the parties for whose benefit it is conducted.

Now if this be the true ground of the general rule, and we are inclined to think it is one of its foundations, the rule and the reason apply as well to a party who receives a sum equal to a certain share of the profits of a business, as to a party thus receiving such share of profits by the name of profits. If the receipt of a share of the profits of a business is evidence that the party receiving such share is interested in the business itself, the receipt of a sum equal to such share and measured by it, is like evidence, and if in the one case the business is regarded as carried on for the benefit of the recipient of the money, it must be equally so regarded in the other case. The mere use of the expression " a sum equal to the profits" in lieu of the word " profits," does not change the nature of the contract. There are indeed cases where money received may appropriately be regarded as a sum measured by profits rather than as profits themselves ; but whether they shall be so regarded depends upon no arbitrary use of phrases, but upon the nature of the contract and the real consideration upon which the money is received. We have

already seen that a share of profits paid to agents to secure exertion is not such a participation in profits as to make the agent liable as partner, and in such cases the money so paid is spoken of as a sum equal to or measured by profits, rather than as a share in the profits themselves.

But the cases do not turn upon the use of a particular phrase, but on the nature of the contract itself, and the nature of the consideration on which the promise to pay part of the profits to the agent is founded, namely, faithful service in the business.

We must then examine the contract itself, and ascertain from its nature what the real consideration was upon which the defendants Canfield and Hutchinson were to receive what it is stipulated they should receive under it, and whether it is or is not substantially a share of the profits. The defendants claim that by the express terms, under seal, of the contract itself, the consideration is simply as a compensation for the trouble, time and expense which Canfield and Hutchinson were put to in procuring the money to loan to Andrews, and that the consideration has no connection with the business to be carried on, but is independent of it, and that the profits are referred to as a mere measure of compensation for services already performed, and indicate no interest in the business, and do not arise from any interest in the business itself.

This construction of the contract seems to us forced and unnatural. The committee finds that the defendants expected large profits, and the turning point of the contract was to secure a share of these large profits to the defendants, Canfield and Hutchinson. These large profits for three years, as being in consideration for past services, presents a disproportion too gross to be regarded as the true meaning of the contract.

The mere procuring the money by Canfield & Hutchinson as a past and completed event was an insignificant matter. It derived all its value from its connection with the continued use of the money in Andrews's business. The real consideration then is procuring and actually lending the money for the term of three years on the terms expressed or implied in

the writing. Canfield and Hutchinson were to receive the sum stipulated because they furnished a loan of money to be used in the business of Andrews, carried on by him at No. 50 State Street, on account of the benefit that business would derive from the use of the money loaned. The sum stipulated to be paid on such consideration is in its nature a profit. That is its appropriate name, and the parties cannot change its nature or obviate its consequences by giving it the name of a sum equal to the profits. We think it is implied in the written contract, as it was in the verbal arrangement, that the money furnished by Canfield and Hutchinson, first as capital and afterwards as a loan, should be used in the particular business of Andrews during the three years; and we attach some importance to this fact, not only by way of inference as above stated as to the true consideration of the agreement to give a share of the profits to Canfield and Hutchinson, but also as bearing upon the point to be spoken of hereafter, that the business carried on by the aid of these funds was in truth the business of all these defendants, prosecuted for their joint benefit, and as to the time of its duration, its subject matter, and the amount of money that should be used in it, moulded and controlled by the concurrence and joint contract of them all.

The real consideration upon which Canfield and Hutchinson were to receive the amount stipulated to be paid to them is that they were interested in the business. Upon this basis they were fairly entitled to a share of the profits. Upon any other basis the agreement giving them a sum proportioned to profits is unnatural and unreal. If a party is to receive profits in consideration of furnishing capital, he is clearly a partner, and is a partner quoad third persons even though it should be stipulated that the capital should be regarded as a loan and be repaid as such by the acting partner with interest, and although it should be further stipulated that the party furnishing capital should be regarded as a mere creditor in respect to the money by him furnished and should have no interest in the stock in trade. That is in substance the relation in which Canfield and Hutchinson stand to the business

of Andrews.   They have the same interest in the results of the business, and of the same kind, that Andrews himself has, and the reason why this interest in profits is given them, is that they under the name of a loan have furnished means to carry on the business.

We have already seen that Justice DeGrey placed the liability of dormant partners on the ground that they take part of the fund on which creditors rely, and that Judge Story placed the liability on the ground that the receipt of a share of the profits was evidence of an interest in the business itself.   In certain late English cases, much discussed, the liability is said to arise from an agency expressed or implied of the ostensible partner.   The dormant partners are regarded as principals, and the liability is said to exist only when such element of principal and agent is involved in the relation of the parties to each other.

In the case under consideration the defendants are liable under each and all these views of the foundation of liability. There are no circumstances here to oppose the conclusion derived from their participation of profits, that they have a real interest in the business itself.   The business is one in which the defendants are all interested.   The defendants are all principals.   Andrews as their agent is using funds furnished by them all, in a manner agreed upon by them all, for their joint benefit and profit.

The rule under which we hold these defendants liable as partners has been much discussed and criticised, and has by many been regarded as harsh and unreasonable, but as before stated it is the recognized rule of the common law, and has been adopted by general consent as the law of this state, and recognized as such in the case of *Loomis* v. *Marshall.*   Our statute of limited partnership is founded upon the supposed existence of the rule.   By that statute funds may be furnished for a partnership business, and a limited liability incurred by the special partner.   But if one may furnish funds to be used in a particular trade, and take a note for the money and receive a share of the profits of the business as a compensation for the use of the money, the statute is superseded.

By the admitted exceptions to the general rule agents and servants employed in a business may participate in profits as a compensation for services without involving themselves in the responsibilities of a partnership. If we should now decide that parties lending money to be used in a business may also participate in profits as a compensation for trouble, time and expense in procuring the money lent, the two exceptions to the rule would annihilate the rule itself. By the first exception the party conducting a business as its agent, and by the second the party furnishing the capital, would be exempt from liability, and thus there would be no case left where parties could not by the force of words alone evade the rule.

A business may in general justly be regarded as carried on for the benefit of those who participate in its profits, and the burdens and responsibilities of such business are in general justly cast upon those for whose benefit it is conducted. There may be exceptions, but we are clear that the case under consideration justly falls within the general rule and must be governed by it.

Another question was made in the case, whether the plaintiff's debt had not been paid or extinguished by renewal notes received by the plaintiff from Andrews alone since the termination of the partnership. If a party voluntarily takes the note of one of several partners in discharge of a copartnership debt the debt may be discharged, but these renewals were before the plaintiff knew of the copartnership, and were not expressly or by inference taken in payment or discharge. The original indebtedness against the defendants therefore still remains, and our advice to the Superior Court is that judgment be rendered for the plaintiff against the defendants for the full amount found due by the committee as originating between January 8th, 1866, and September 1st, 1868.

In this opinion the other judges concurred