# A. STROHM *v.* W. F. WILSON, A. COCKBURN and A. McDOWELL.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 1, 1896.                    DECIDED MAY 30, 1896.

#### JUDD, C J., FREAR AND WHITING, JJ.

A agreed with B and C in consideration of the loan to him of apparatus to be used to float a steamer off the reef when she was aground to pay to B and C $6000, which was equal to one-third of the price to be paid A by the steamer and to return the apparatus, and, in case of success, then A to also purchase and pay for the apparatus.

The value of apparatus furnished was $2500.    The venture failed.    B and C took no part in carrying out the venture, nor did they in any way hold themselves out as partners of A.    There was no actual partnership between A and B and C; and no intent to create a partnership.

*Held,* that B and C were not liable to third parties as partners of A.

*Held,* that the agreement was not a mere cloak or cover to conceal a latent design, nor a device to escape liability as partners while enjoying the benefits of a partnership under the design of a loan.

#### OPINION OF THE COURT BY WHITING, J.

The steamship "Miowera" was aground off the port of Honolulu and one McDowell agreed with the agents of the vessel to float her without damage to the vessel for the sum of $18,000, within a period of seven days from the commencement of the work.

McDowell then entered into an agreement with W. F. Wilson and A. Cockburn, whereby, in consideration of Wilson and Cockburn "loaning to him certain cables, blocks, ropes, lumber

and other articles to be used by him in the attempt to float off into deep water the steamship 'Miowera,' now stranded on the reef at the entrance to Honolulu harbor," McDowell "binds and obliges himself to pay to Wilson and Cockburn, when called upon to do so, $6,000.00, and it is also agreed that in the event of McDowell being successful in floating the steamship, then he agrees to purchase from Wilson and Cockburn all the said cables, blocks, ropes, lumber and other articles loaned to him by them, and to pay the cost price of the same, delivery to be considered as given by Wilson and Cockburn to McDowell, whenever he succeeds in floating off the steamship, and further agreed that should McDowell fail in his attempt then he shall immediately after such failure recover and deliver up to Wilson and Cockburn, at the Pacific Mail wharf, and free from all expense to them, all the cables, blocks, ropes, lumber and other articles loaned by them to him."

This agreement was duly acknowledged and recorded in the Registry of Conveyances in Honolulu.

It appeared in evidence that the articles to be furnished by Wilson and Cockburn were not to exceed in the whole $2,500, and that articles were actually furnished to a large part of that amount. McDowell failed in his attempt. The plaintiff, with numerous other workmen, was employed by McDowell in the attempt to float the steamship, and was to be paid $3.00 per day and double pay for night work, and if the attempt was successful was to receive double pay for whole time.

McDowell did not pay the plaintiff, and he, the plaintiff Strohm, now seeks to hold the defendants Wilson and Cockburn liable on the ground that they are partners with McDowell in his venture under the agreement between McDowell and Wilson and Cockburn.

At the close of the plaintiff's case a motion for non-suit was made and granted by the Circuit Judge who heard the case without a jury, "on the ground that the plaintiff had not established a *prima facie* partnership between McDowell, Wilson and Cockburn at the inception of the enterprise as would authorize

McDowell in the absence of the others to bind them for debts incurred by him in the prosecution of the undertaking, and also for the reason that the evidence had failed to show that Wilson and Cockburn or either of them had become liable to pay the wages of the laborers by any acts of omission or commission on their part."

The Judge also found "there was no general sharing of the profits between the defendants as would make them partners as to third parties, in fact there were no profits to be shared. McDowell failed in his efforts, and consequently did not receive any compensation. The theory upon which the courts have held all those who participated in the profits of a business of venture to be partners as to third parties, and thereby liable to pay the general indebtedness, irrespective of any stipulation between themselves, is that they have shared in the results that were made possible by the contraction of the debts, and therefore should contribute to their payment. The $6,000 agreed to be paid by McDowell was in the nature of a bonus for the advancement of the articles in an hazardous undertaking in which they might be lost."

"I see no reason for changing the order of non-suit made at the trial."

The foregoing is from the written decision of the Circuit Judge, but in the bill of exceptions is set forth the oral decision of the Judge in directing a non-suit as taken by the stenographer, viz:

The court granted said non-suit and ruled as follows:

"In granting the defendant's motion for a non-suit, the court finds that there has been no partnership shown, nor such an arrangement or agreement between the parties that it was a sharing in the profits or losses of the enterprise, that the arrangement was between the parties for a loan of these materials, and if the enterprise proved successful they would be repaid for their materials furnished, and also given a bonus on behalf of McDowell."

"The turning point in my mind is, as I consider the case

very close to the line, perhaps a case in which several judges sitting together might all disagree as to whether or not there has been any sharing of profits, that no partnership having existed between the parties themselves, so that McDowell might come upon the other gentlemen for a contribution in case of an individual loss, that there must be a clear showing that there was a participation in profits that they might establish a *prima facie* case. The most that can be said is that it was a contemplated participation in profits, and therefore would participate in any of the losses of the parties. That is one of the grounds on which I sustain the objection to a *prima facie* case being made out. As I said before, I consider it a very close case, very near to the line. At present I am of the opinion that a non-suit should be granted, and it is so ordered."

This was not a general trading or commercial business, but a special venture involving special and extraordinary risks. The materials loaned were to be returned or paid for. The price to be paid for the loan is very large, but who can say it was disproportionate to the risk of the venture. The parties to the contract had no intention of making a partnership, and no such intent appears from or can be inferred from the contract itself. The defendants Wilson and Cockburn took no part in the work, nor did they hold themselves out to the plaintiff in any way as partners of McDowell, nor in any manner so as to estop them from denying liability to creditors of Mc-Dowell. And considering all the circumstances there is no partnership.

"Participation in the profits or the right to participate therein is not an invariable test of partnership, even as to creditors. A person not actually engaged in the business as a principal and not holding himself out as a partner cannot be held for debts, incurred in the business, unless in virtue of some contract express or implied, on his part, in legal effect creating, as between him and the persons actually carrying on the business, the relation of principal and agent. Merely sharing in the profits, where third persons have not been legitimately led to believe

in the existence of a partnership, does not create a partnership as to them, unless there is one in fact, or unless a party has by his acts put himself in such position that he is estopped from denying that he is a partner."

*Embersen v. McKenna et al.,* 16 S. W. Rep. 419.

Mere receiving of profits is not sufficient to constitute a partnership, but all the circumstances must be considered. "Examination of the authorities cited, and of the cases referred to by them, will show that a partnership cannot be inferred merely from a 'common interest,' from a sharing in profits, from the right to account, nor from a direct control over the business."

*Tucker v. Estate of Metcalf,* 3 Haw. 198.

It depends on the contract itself whether Wilson and Cockburn were partners of McDowell. It is claimed by the plaintiff that this document is *prima facie* proof of a partnership, and that therefore a non-suit should not have been granted; that the agreement to pay $6,000, which was a third of the price for the successful floating of the steamer, in consideration of the loan of $2,500 of materials, was a participation in the profits, and therefore is *prima facie* proof of a partnership. But this is what the court is to decide, and from the document itself, for there was no testimony outside of the contract going to show the existence of a partnership; on the contrary, the evidence produced by the plaintiff, who called the defendant Cockburn, is directly against the theory of a partnership and a direct denial of partnership or intent in any way to be or become partners or to hold out to any one that they, Wilson and Cockburn had anything to do with the venture other than their own advances—or loans.

It is claimed on the authority of *Pooley v. Driver,* L. R., 5 Ch. Div. 458, *In re Francis,* 2 Sawyer 286, and *Parker v. Canfield,* 37 Conn. 250, that this document was a mere cloak or device under cover of a loan to conceal a partnership and thus escape a liability to creditors.

The law will not tolerate any evasion, but whenever the agreement creates as a matter of fact the relation of partnership, no mere words to the contrary will prevent, as regards third persons, its having its legitimate consequences. That was the law of those cases, and the evidence and facts sustained the conclusions arrived at, and there were many other circumstances in each case which showed a latent design to create a partnership under the disguise of a loan.

But in the case at bar we cannot find sound grounds to suspect any such latent design. It clearly appears that in fact there was no partnership, in fact no intention to in any way create a partnership. Being a special venture, the parties, Wilson and Cockburn, have clearly set forth the intent to loan special apparatus, which, to be sure, they were obliged to purchase, as they were not engaged in any business which required the same to be kept on hand, and their being risk of its entire loss, they sought merely to obtain remuneration in proportion to the risk; and under the circumstances of this case one has the right to fix and limit his liability, and the law will not make a partnership with liability to third parties under these circumstances. It might as well be said that the plaintiff was a partner because he was to receive pay by day, double pay at night, and in case of success, that he was to be paid double that agreed.

The defendants Wilson and Cockburn not having held themselves out to the plaintiff as a partner of McDowell, and not in any way controlling or taking part in carrying out the venture, nor having placed themselves in such position as to estop them from denying a partnership, and there being in fact no partnership created between them and McDowell, we hold that the agreement of loan is not sufficient to create a partnership, and the non-suit was properly granted.

We cannot agree with the reason given by the Circuit Judge in his oral decision, that there must be an actual participation in profits and not merely a contemplated participation. We do not think this is sound law. Agreement to participate in profits as profits would be as strong as actual participation in

the profits.    But this will not avail plaintiff in the view we have taken; the result of non-suit is the same although one of the reasons given by the Circuit Judge may have been unsound.

We refer also to the following cases bearing on the main point:

> *Boston Smelting Co. v. Smith,* 13 R. I.  27.
> *Denny v. Cabot,* 6 Met.  92.
> *Needham v. Valentine,* 29 Fed. Rep.  276.
> *Holmes v. Old Colony R. R.,* 5 Gray  58.

Exceptions overruled.
*Kinney & Ballou,* for plaintiff.
*P. Neumann* and *J. A. Magoon,* for defendants.