THE CITIZENS' NATIONAL BANK *vs.* GEORGE HINE AND OTHERS.

*H* and *L*, who had for several years been carrying on manufacturing as a firm in this state, entered into a contract with *A* and *B* under which a joint stock corporation was to be formed for the prosecution of the business, the capital of which should be taken equally by the four; and, in consideration of *A* and *B* having advanced money for immediate use, they were to share equally in the profits from that date. The joint stock corporation was not organized until about nine months after, the business in the meantime being carried on by *H* and *L* in their name as a firm. *A* and *B* lived in other states and had nothing to do personally with the business. Held that they were liable, as partners of the firm, for debts incurred in the business after the date of the contract.

But held that they were not liable for notes given by *H* and *L* after the date of the contract, in renewal of notes given by the firm before.

The contract was executed in the state of Massachusetts, but the business to which it related was then carried on in this state. Held that the question whether *A* and *B* had become liable as partners was to be determined by the law of this state.

But it seems that the law of Massachusetts does not differ from that of this state upon that question.

ASSUMPSIT upon seven promissory notes made by the firm of Hine & Longdon; brought, by appeal from the City Court of the city of Waterbury, to the Superior Court in New Haven County. The facts were found by a committee and the case reserved for the advice of this court. The case is sufficiently stated in the opinion.

*S. W. Kellogg* and *G. E. Terry*, for the plaintiffs.

1. The contract is to be construed by the laws of this state, where it was intended to be, and was in fact, performed. 2 Parsons on Cont., 6th ed., 583, and cases cited in note *g*.

2. The advancement of money by Alden and Banigan with an agreement that they were in consideration of it to have an equal share of the profits, made them, as against creditors of the firm, liable as co-partners. *Parker* v. *Canfield*, 37 Conn., 250; Collyer on Part., 6th ed., 84, and cases cited in note.

3. If it is claimed that the notes in suit are renewals of prior notes, representing an indebtedness to the plaintiff existing prior to the execution of the contract, then we answer that there has been a full and complete novation of all this indebtedness, by the giving of the notes in suit, by which Alden and Banigan, as well as the other defendants, are made liable. The Russell note, however, is not liable to this objection, for that is an original note, and not a renewal of any prior existing note. All the notes in suit are the notes of the new firm, given during its existence in the ordinary course of business and for the benefit of the firm, in which Alden and Banigan had placed their $2,000 for a share in the profits. They were signed or indorsed "Hine & Longdon," by Hine, who was the sole financial manager of the firm and the agent of the other co-partners for this purpose; and as such agent he had full power to bind the firm. There was a novation by the new firm, namely, a new promise by Hine, fully authorized, an acceptance by the plaintiffs, a discharge of the old firm and acceptance of the new by surrendering the notes of the old firm; and the incoming partners were liable on such new promise. Collyer on Part., 6th ed., §§ 525, 533; *Rolfe* v. *Flower*, 3 Moore P. C. C., N. S., 365.

*H. Stoddard* and *W. L. Bennett*, for the defendants.

1. The contract having been executed, and the money to be paid under it, in the state of Massachusetts, it is governed by the law of that state. *Koster* v. *Merritt*, 32 Conn., 246; *Clark* v. *Conn. Peat Co.*, 35 id., 303; *Ballard* v. *Winter*, 39 id., 179. Construed by that law it did not make the defendants partners with Hine and Longdon. *Denny* v. *Cabot*, 6 Met., 93; *Bradley* v. *White*, 10 id., 304; *Hawes* v. *Tillinghast*, 1 Gray, 289; *Pratt* v. *Langdon*, 12 Allen, 545; *Haskins* v. *Warren*, 115 Mass., 514; *Commonwealth* v. *Bennett*, 118 id., 453.

2. If it is to be construed by the law of this state, the defendants are not partners. Our law in this respect is the same with that of most of the other states and with the

Citizens' Bank v. Hine.

common law of England. *Richardson* v. *Hughitt*, 76 N. York, 59; *Burnett* v. *Snyder*, 81 id., 550; *Eastman* v. *Clark*, 53 N. Hamp., 276, 289; *Hart* v. *Kelley*, 83 Penn. St., 286; *Harvey* v. *Childs*, 28 Ohio St., 319; *Smith* v. *Knight*, 71 Ill., 148; *Cox* v. *Hickman*, 8 H. L. C., 268; *Kilshaw* v. *Jukes*, 3 Best & Smith, 847; *Shaw* v. *Galt*, 16 Irish C. L. R., 357, 375; *Kelly* v. *Scotto*, 42 Law Times, N. S., 827; *Bullen* v. *Sharp*, L. Reps. 1 Com. Pleas, 86, 125, 129; *Holme* v. *Hammond*, L. Reps. 7 Exch., 218, 230; *Mollwo* v. *Court of Wards*, L. Reps. 4 Priv. C., 435; *Ross* v. *Parkyns*, L. Reps. 20 Eq., 331; *Ex parte Tennant*, L. Reps. 6 Ch. Div., 303; *Dean* v. *Harris*, 33 Law Times, N. S., 639; *Meyer* v. *Schacher*, 38 id., 97; *Curry* v. *Fowler*, 9 Reporter, 757; *Boston & Colorado Smelting Co.* v. *Smith*, 13 R. Isl., not yet published.

3. If the defendants can be held liable for debts incurred after the contract, yet they can not be for the renewal notes given by Hine & Longdon for debts previously contracted. 1 Collyer on Part., § 190.

PARDEE, J. On January 24th, 1877, George Hine and Charles E. Longdon were and since 1874 had been partners in the business of making articles from rubber at Naugatuck in this state, under the various names of "Hine & Longdon," "Seamless India Rubber Works," and "Seamless Rubber Company," and were debtors to the plaintiff for borrowed money. On that day Hine, Longdon, George A. Alden, resident in Boston, Massachusetts, and Joseph Banigan, resident in Providence, Rhode Island, entered at Boston into a written contract by which each agreed to become the owner of one quarter of the capital stock of a joint stock company for the continuance of the same business, thereafter to be organized, and located either in New York, Massachusetts, Connecticut or Rhode Island, to which Hine & Longdon were to transfer the machinery, stock, patents, and other property then owned and used by themselves. The concluding paragraph in the contract is in these words:—"And as said Alden and Banigan have advanced to said Seamless India Rubber Works the sum of

two thousand dollars, to enable them to furnish goods for the spring trade, it is agreed on the part of said Hine and Longdon that the said Alden and Banigan shall have an equal share in the profits of said business from this time, and that the same may be plainly determined said Hine and Longdon agree to take an inventory at once of the property of said works." On that day Hine showed to Alden and Banigan an inventory of the property of Hine & Longdon, and left with one of them a copy thereof.

Pursuant to the understanding and with the knowledge of all parties the business of Hine & Longdon was continued at Naugatuck until October, 1877, when that firm transferred its property to "The Seamless Rubber Company," a joint stock company organized in pursuance of the contract under the laws of and located in this state. Within two days after the execution of the contract Hine communicated the contents thereof to the president and cashier of the plaintiff bank, and subsequently showed it to the latter; they then made inquiries as to the financial condition of both Alden and Banigan, and were informed that they were men of wealth, and believing them to be partners in the firm of Hine & Longdon, they ceased to press payment of their accommodation notes. Neither of them ever made any inquiry of either Alden or Banigan concerning their relations to the firm of Hine & Longdon.

There are seven notes in suit. With one exception each note was made or indorsed by Hine & Longdon by the hand of George Hine after the execution of the contract by Alden and Banigan on January 24th, 1877, and is the last in a series of renewals of an original note made or indorsed by Hine & Longdon and discounted by the plaintiff for their benefit before that date; and by the sole direction of George Hine the plaintiff applied the proceeds of each of them to the maturing note preceding it in its particular series. The plaintiff discounted for Hine & Longdon a note dated June 22d, 1877, made by H. D. Russell and indorsed by George Hine and Hine & Longdon, for $300, payable at four months. This was an original note,

renewed by a note in suit bearing date October 25th, 1877, the maker, indorsers, and the sum and time being the same. This is the excepted note referred to.

Neither Alden nor Banigan took any part in controlling, directing or managing the business; neither had any knowledge that either of the notes in suit existed, or that the contract had been shown or its contents made known to the plaintiff, or as to its dealings with George Hine or Hine & Longdon; and neither in any other manner authorized Hine & Longdon to bind him as a partner than by executing the contract.

The facts were found by a committee. The case is reserved for the advice of this court.

It is the claim of the defendants Alden and Banigan that the law of the place of signing the contract is to determine the effect of it; and that by the law of Massachusetts it does not impose upon them any liability as partners. But by it they acquired the right to a share of the profits of a business already established and having its actual location in the state of Connecticut; they agreed that it should continue to be there conducted; they intended that Hine & Longdon should there acquire rights for their benefit, and there incur obligations for the legitimate purposes of the business. From these facts a presumption of law arises in favor of creditors parting with their money upon the faith of a contract thus placed in the hands of Hine & Longdon, that Alden and Banigan intended to subject themselves to the interpretations which this forum should put upon it.

Moreover, we are of opinion that the contract would be interpreted in Massachusetts as in this state. For in *Fitch* v. *Harrington,* 15 Gray, 474, the court said:—" Now what is our law and the law of England on this subject? We understand it to be this — an agreement between one co-partner and a third person that he shall participate in the profits of the firm, as profits, renders him liable as a partner to the creditors of the firm, although as between himself and the members of the firm he is not their co-partner; but if such third person, by his agreement with

one member of the firm, is to receive compensation for his labor, services, &c., in proportion to the profits of the business of the firm, without having any specific lien on the profits to the exclusion of other creditors, he is not liable for the debts of the firm." And in *Pratt* v. *Langdon*, 12 Allen, 544, the court said:—" The general principles that govern the case were recently stated in the case of *Fitch* v. *Harrington*, 12 Gray, 468. If both were to participate in the profits of the business as profits, both are liable; but if Langdon was to receive half the profits as a compensation for what he did for Wilson, without having any specific lien on the profits, he is not liable. Receiving one half of the profits, or one half of the net profits, unless it was to be received as profits, would not make him a partner." It is the law of this jurisdiction, stated generally, that the fact that one has acquired the right to receive a share of the profits, as profits, accruing from the conduct of a business, is *primâ facie* proof that he has also come under an obligation, so far as creditors are concerned, to pay the debts contracted therein. The integrity of the rule has not been affected by the concession to servants and agents of the privilege of receiving a percentage of profits in payment for their services, and to landlords of receiving a portion of a tenant's profits in payment of rent, without incurring liabilities as partners; nor by any other established exception; and it stands with equal firmness whether we regard it as resting upon the fact that he who takes the profits diminishes the fund upon which creditors rely for payment, or upon the general principle that he who purchases the right to a share of the profits of a business makes every other sharer in them an agent to conduct it for his benefit. *Parker* v. *Canfield*, 37 Conn., 250. The contract before us is an agreement that the investment of $1,000 each by Alden and Banigan in the previously established business of Hine & Longdon shall leave to each of the four an equal share of the profits as such; and with that privilege came responsibility to the two former for all obligations thereafter entered into by the two latter in the proper conduct of the

business of the new firm. The contract gives no warning to subsequent creditors that either Alden or Banigan had or desired the protection of any of the exceptions to this rule of liability.

But it is an equally well established rule that the contract did not clothe either Hine or Longdon with power to bind Alden and Banigan to the payment of the debts of the old firm. The agency created by it was solely as to undertakings in the future for the legitimate purposes of the new one. To the debts of the old firm Alden and Banigan remained strangers, as perfectly as if they had not entered the new one; as perfectly as if they had associated themselves with others than Hine and Longdon; and they could only become bound to pay those debts as they would become bound to pay the debts of strangers; expressly, by an agreement to pay; or impliedly, by standing silent and knowingly permitting Hine and Longdon to pledge them to payment. *Sheriff et al.* v. *Willes*, 1 East, 48; *Firemen Insurance Co.* v. *Bennett*, 5 Conn., 574; 2 Collyer on Part., §§ 525, 527, and cases there cited; Story on Part., §§ 152, 153; *Ven* v. *Ashby*, 10 Barn. & Cress., 288.

The finding is that neither of them "took any control or direction in or over the business and did nothing in reference to its management; nor did they ever inquire or know about the account with the plaintiff or the dealings of the bank with George Hine or Hine & Longdon; nor that the contract had ever been shown to the officers of the bank, or its contents had been brought to their notice; nor that any of the notes in question in this suit had been made or indorsed or existed."

As Alden and Banigan were and continued to be residents in other states, as they took no part personally in the management of the business and had no actual knowledge as to the manner in which it was conducted generally, no knowledge that Hine & Longdon were using the funds advanced by them and the credit of their names in the payment or renewal of the notes of the old firm to the plaintiff, there is an utter absence of even those slight

circumstances upon which courts have sometimes based an implied assent to such payment and renewal. Therefore we impute none to them.

The Superior court is advised to render judgment for the plaintiff for the amount of the note signed by H. D. Russell for $300, dated October 25th, 1877, and indorsed by the defendants, as by the record that note is the renewal of a note for the same sum, having the same maker and indorsers, dated June 22d, 1877, payable at four months; this last note appearing to have been originally the obligation of the new firm.

In this opinion the other judges concurred.