LAURA MORGAN, EXECUTRIX, *vs.* FRANKLIN FARREL & ANOTHER.

New Haven & Fairfield Cos., Jan. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, PRENTICE and THAYER, JS..

The question whether a partnership existed between certain persons, where the terms of their agreement and all the facts are admitted, becomes a question of law.

It is not enough to constitute a partnership that the parties have a common interest in the net proceeds of a business.

*A* and *B* made a contract with *C*, the owner of a patent for a machine, by which *C* granted to them the exclusive right to make and sell the machine in the United States, and *A* and *B* agreed to manufacture a machine without expense to *C*, and to run it for two months, and afterwards to make machines to supply orders, and to pay to *C* an amount equal to one half the gross profits of the business. Held not to create a partnership of *C* with *A* and *B*.

And as the contract made no provision with regard to the way in which *A* and *B*, as between themselves, should carry out their joint undertaking, it could not be construed as making them partners.

The liability of a person who is claimed by his course of conduct to have become a partner as to third persons, is based on the doctrine of estoppel, and in order to charge him on that ground it is not enough to show that he was represented by others to be a partner, or that his name appeared in the firm; it must be shown that he knew that he was being held out as a partner and that he assented to it, or facts must be shown from which such assent can fairly be inferred.

It is always a question of fact whether there has been such a holding out as to estop the party from denying the partnership.

A party setting up an estoppel by conduct must show that he exercised good faith and due diligence in endeavoring to ascertain the truth.

Where the claimed partnership was that of *A & Co.* as manufacturers of machinery in a certain street in the city of New York, and the plaintiffs, who had sold goods to a representative of the concern on the representation that *A* was a partner in it, had on inquiry at two mercantile agencies in the city been unable to learn that any such firm existed, though they were informed with regard to *A* and his responsibility, and *A* was a well known manufacturer of machinery in a town in this state, of large means, from whom information could have been at once obtained by telegraph or who could have been reached in a very short time by railway, it was held that the plaintiffs, in neglecting to make further inquiry, had not used good faith and due diligence to ascertain the truth, and could not set up the estoppel against *A*.

The plaintiffs introduced letters which had passed between *A* and *B* on

the business in which they were claimed to be partners and which con-
tained expressions tending to show that a partnership existed.   Held
that *A* might introduce other letters that had passed between them for
the purpose of showing that the letters in question had reference to
other matters and not to that particular business.

[Argued February 10th—decided March 3d, 1890.]

ACTION to recover the amount of two notes and for mer-
chandise sold, the defendant Farrel being claimed to have
been a partner in the firm in the name of which the notes
were executed and to which the goods were sold ; brought
to the Superior Court in New Haven County, and heard
before *Fenn, J.*   The other defendant was William M. Bab-
bott, who resided out of the jurisdiction when the suit was
brought, and no service was made upon him.   The original
payees of the note and sellers of the goods were Montague
Morgan and Bauman H. Herrick, partners under the name
of Morgan & Herrick, doing business in the city of New
York.   The firm had since been dissolved and the present
claim had become the sole property of Morgan, who had
since died, and the present suit was brought by his execu-
trix.   The facts were found by the court and judgment
rendered for the defendant Farrel.   The plaintiff appealed.

The case is sufficiently stated in the opinion, except a
certain contract which is commented on but not quoted by
the court.   This contract, which is referred to as exhibit two,
was executed by the Cook Ice & Refrigerating Machine
Company, as the party of the first part, and by Farrel
and Wm. M. Babbott as the party of the second part.   It
bears date March 22d, 1879, and the important parts of it
are as follows :—

" Whereas letters patent of the United States for certain
improvements in ice and refrigerating machines and appara-
tus, were granted to Thomas Cook, dated [&c.,] and where-
as said party of the first part holds title in and to said letters
patent by assignment from said Thomas Cook, and the said
parties of the second part are desirous of acquiring the rights
hereinafter granted to them :—Now, therefore, in considera-
tion of the performance by the said parties of the second

part of the covenants by them made and hereinafter contained, the said party of the first part hereby gives and grants to the said parties of the second part, their heirs and assigns, the exclusive right to manufacture and sell refrigerating machines and apparatus for refrigeration, as described and secured in and by said letters patent, for use for any and all purposes except brewing, and to sell territorial rights and convey or grant interests, rights or licenses in or under said letters patent for the leasing and using of such machines and apparatus for all purposes except brewing throughout the territory of the United States, and to the full end of the respective terms for which said several letters patent were granted, excepting as hereinafter reserved, and all and singular the exclusive rights and privileges under any patent, patents, reissue or reissues, which may be granted the said party of the first part, or under any patent, patents, reissue or reissues, which may be acquired by it in any manner whatsoever, for any improvement or improvements made in said machines, or for any invention or inventions for a like purpose, upon and subject to the following express terms, to wit:

"*First.* The said parties of the second part shall, with all diligence and dispatch, and without expense or charge to the party of the first part, manufacture a refrigerating machine under the said patents, and for the purpose of aiding and benefiting the business hereinafter mentioned, shall run the said machine at least for two months succeeding the time of its completion.

"*Second.* The said parties of the second part shall use their best endeavors to introduce machines and apparatus containing said patented improvements to public notice and create a demand therefor, and shall use reasonable diligence to build or cause to be built said machines and apparatus to fill any *bonâ fide* orders which may be given for the same by responsible parties, for such prices and upon such terms and conditions as shall be from time to time agreed upon by the parties hereto; and shall also use reasonable diligence and their best endeavors to effect sales of interests, rights or licenses in or under the said letters patent, at such prices and

upon such terms and conditions as shall be from time to time agreed upon by the parties hereto; and said parties of the second part shall not become interested in the manufacture or sale of any machine or apparatus the manufacture or sale of which would compete with or diminish the business first aforesaid. * * *

" *Third.* The said parties of the second part shall pay over to the said party of the first part, its successors or assigns, as royalty or patent fee, an amount equal to one half of the gross profits accruing to them from the manufacture and sale of machines, or from the sale of rights or licenses in or under said letters patent.

" *Fourth.* The said party of the first part shall bear one half of the expenses which the said party of the second part may, with the written consent and approval of said party of the first part, incur for the purchase of any patents, or inventions, or rights therein or thereunder, for the protection or benefit of the business to be carried on under this agreement. And said party of the first part shall bear one half of the expenses which the said party of the second part may, with the written consent and approval of the said party of the first part, incur in carrying on and defending any suit or suits which may arise under or concerning said letters patent and inventions or any of them.

" *Fifth.* The said parties of the second part shall manufacture or cause to be manufactured the said machines and apparatus at the lowest prices consistent with good quality, according to the market at the time of their manufacture.

" *Sixth.* The said parties of the second part shall keep just and correct books of account of said business, in which shall be entered all matters and transactions relating thereto which are usually entered in books of account, and shall also keep vouchers for the expenditures made by them in said business, and they shall permit the said party of the first part, its officers or attorney, at all reasonable times and hours to inspect said books and vouchers, and on or before the first day of each quarter the said parties of the second part shall make and render to the said party of the first part, its

successors and assigns, a statement of the sales, transfers and licenses, and of the receipts and expenditures for making and erecting said apparatus during the quarter last preceding such account, and showing the profits of said business for said quarter, which statement shall be verified by the oath of said parties of the second part, if required; and they further agree that on or before the twentieth day of each quarter they will pay to said party of the first part, its successors or assigns, the sums appearing by said account to be due to it or them under and by virtue of the terms of this agreement: * * * "

*C. S. Hamilton*, for the appellant.

1. Farrel was under the circumstances in law and in fact a partner with Babbott as to Morgan & Herrick. Their relations *inter sese* are not involved in this case and need not be discussed. Whether there was a partnership is a question of law. *Everitt* v. *Chapman*, 6 Conn., 347. This court has said:—" If a party is to receive profits in consideration of furnishing capital, he is clearly a partner, and is a partner *quoad* third persons even though it should be stipulated that the capital should be regarded as a loan and be repaid as such by the acting partner with interest, and although it should be further stipulated that the party furnishing capital should be regarded as a mere creditor in respect to the money by him furnished and should have no interest in the stock in trade." *Parker* v. *Canfield*, 37 Conn., 250. To the same effect is the law as laid down in the following cases:— *Everitt* v. *Chapman*, 6 Conn., 347; *Bucknam* v. *Barnum*, 15 id., 67; *Citizens' Bank* v. *Hine*, 49 id., 236; *Brigham* v. *Clark*, 100 Mass., 430; *Champion* v. *Bostwick*, 18 Wend., 175; *Cushman* v. *Bailey*, 1 Hill, 526; *Oakley* v. *Aspinwall*, 2 Sandf., 7; *Catskill Bank* v. *Gray*, 14 Barb., 471; *Williams* v. *Gillies*, 53 How. Pr. R., 429. We have all the essential elements to bring this case within the cases above quoted.—(1) An agreement between Farrel and Babbott, to go into the business of making these machines *on equal shares of the profits.*— (2) A contract by these two as one party with the Cook com-

pany to make these machines, and Farrel and Babbott to take half the profits, to be divided between them, the other half to go to the Cook company.—(3) David Smith, the man who ordered the goods, employed by Farrel and Babbott together, to construct these machines.—(4) The goods sold in good faith on the representation that they were to be used in these machines, without any knowledge on the part of Morgan & Herrick that Farrel claimed to have abandoned the enterprise. We are aware that the finding says that there was never anything done towards the construction of a machine "except as hereinafter appears;" but this is simply equivalent to a finding that nothing was done except what was set forth in the finding. We are also aware that no profits were in fact returned from the venture, but that was because none were made; and in almost all cases when a person has been held as a partner as against third parties the business has been a losing one. If the venture had been a profitable one, no man would have been more eager than Farrel to call it a partnership. If they entered into an agreement for the sharing of profits, which in law amounted to a partnership *quoad* third parties, they were partners, even if they had expressly agreed that they should not be partners. Parsons on Part., 51; *Parker* v. *Canfield, supra; Winship* v. *U. S. Bank,* 5 Pet., 561. A firm name is not essential to a partnership. *Manhattan Brass Co.* v. *Sears,* 45 N. York, 797. Partners are agents of one another without any express stipulation that they may use each other's names. Parsons on Part., 95. Nor is it of any consequence as to third parties that Farrel and Babbott did not understand that they were partners. In *Parker* v. *Canfield, supra,* they had positively agreed that they should not be partners, yet this court held that they were so as to third parties.

2. But even if Farrel were not in law and in fact a partner, he allowed himself to be held out to the world as a partner, and is liable for so doing. "If he does anything which might fairly produce the impression that he is a partner, or, when another does this, fails to do what he should to remove or prevent this impression, then he is as much

liable as if he calls himself a partner." Parsons on Part., 134. He allowed exhibit two to remain in the hands of Babbott, without any notice by advertisement or otherwise to the world that it was not all right, and to be shown to Morgan & Herrick, containing a stipulation that he should manufacture with Babbott these machines, and he and Babbott retain one half the gross profits to be divided between them. The third clause provides that a patent fee equal to one half of the gross profits shall be paid to the Cook company; the other half of the gross profits are obviously to be retained by Farrel and Babbott, and divided between them as stipulated for in their verbal agreement. Thus, while, as between Farrel and Babbott on the one hand and the Cook company on the other, there is not to be a division of profits as profits, yet as between Farrel and Babbott the one half of the profits retained by them is to be divided between them as profits. The provisions under clauses fourth, sixth and seventh clearly show that Farrel and Babbott are together to bear half the loss of the enterprise and receive half the profits; and there is no stipulation or hint that each is to receive a sum equal to one quarter of the profits, but the two take a title in common to one half of the profits. Farrel also wrote the letter containing the words, " I have concluded to go on with the matter," which was read by Morgan & Herrick, and he allowed Smith to go out into the world with a paper in which it was stipulated that Smith should develop " the Cook principle of making cold air by a refrigerating machine." Were not Morgan & Herrick under these circumstances justified in believing that Farrel was engaged in the enterprise? In October, 1879, under advice of counsel, Babbott issued notes bearing the name of Franklin Farrel & Co., and on the 15th of January, 1880, the notes went to protest and Farrel knew of their existence; and it appears that he did absolutely nothing to prevent what he now calls the improper use of his name. He knew that Blackwell's, on Clarkson and Greenwich streets, would probably be a place where Babbott would start the business. He was so informed by Frank Babbott, and of

the proposed arrangement. On January 20th, 1880, Bab-bott had written him that he saw no excuse for his not going on with the business. Yet in the face of all these facts he never inserted a notice of any kind in any paper; he never sent notice to Babbott or Smith to desist; he never went near Blackwell's, although he had an office in New York; he never took the first step to learn from the Anso-nia Bank (where his notes were going to protest) from what source they came; he never made the slightest attempt to arrest Babbott or punish him for what would be forgery if he had no right to use his name; he never inquired at Clarkson street), where the machine was put up, to find out who was supplying the goods therefor, which he might have done and saved Morgan & Herrick from giving credit to any considerable amount. He in fact never did any-thing that a prudent man ought to have done to prevent an improper use of his name. But he did one significant thing. He consulted his attorney "and sent him to New York with instructions to do all he could to investigate "— not to do all he could to prevent the business going on— but after he had done all he could to investigate, then he was "to do what he deemed proper under the situation." And then mark what follows—nothing further was ever done. The conclusion is inevitable. The machine was up and running at that time and likely to prove a success. The attorney saw good reason for doing nothing further. If the enterprise proved a success, as Farrel doubtless supposed it would when he went into it, it would destroy his golden visions to repudiate the partnership. If it turned out a success, he could claim his quarter of the profits; if a fail-ure, disclaim the partnership. No man should be thus allowed to play fast and loose.

3. The court erred in admitting the letters relative to the whiskey business. If the plaintiff introduced evidence which was irrelevant and immaterial the proper course was for the court to exclude it. It is no justification for one side to introduce improper testimony that the other side has done so. *Barnes* v. *State*, 20 Conn., 254; *Phelps* v. *Hunt*,

43 id., 194. Even if the evidence concerning the whiskey business was admissible to contradict Babbott, or to show that certain letters referred to that business which were claimed to refer to the refrigerating business, yet the court after letting it in did not confine it to that purpose.

*J. W. Alling* and *W. H. Williams*, for the appellee.

ANDREWS, C. J. On the first day of March, 1880, William M. Babbott made and delivered to the firm of Morgan & Herrick, merchants, then doing business in New York, a note for the sum of one thousand and four $\frac{56}{100}$ dollars, expressed to be for value received and payable in thirty days; and on the eighth day of the same month another note for the sum of two thousand two hundred and five $\frac{69}{100}$ dollars, payable in thirty days at the Ansonia National Bank, Ansonia, Conn. These notes were signed by Babbott in the name of "Franklin Farrel & Company," and were delivered to Morgan & Herrick in payment for certain goods sold and delivered by them to Babbott on his order therefor.

The plaintiff is now the owner of the notes and brings this suit to recover their amount. The complaint alleges that at the time the notes bear date Franklin Farrel and the said William M. Babbott were partners in business under the firm name of Franklin Farrel & Company. Farrel alone makes defense. No service of the complaint was made on Babbott. The answer is a general denial.

Upon the trial evidence was offered from which the plaintiff claimed to have proved that Farrel and Babbott were partners as between themselves, or at least that they were partners as to all third persons, or that Farrel was liable as a partner to Morgan & Herrick for the reason that he had permitted Babbott to hold out that Farrel and himself were partners under such circumstances that he was estopped to deny that he was a partner. Farrel denied that he was a partner in either way. The Superior Court rendered judgment for the defendant and the plaintiff has appealed.

An exhaustive definition of partnership is not easy. So

far as the facts in the case present the question of partner-ship it is sufficiently accurate to say that there is a partner-ship between two or more persons whenever such a relation exists between them that each is as to all the others, in re-spect to some business, both principal and agent. If such a relation exists they are partners; otherwise not. They are partners in that business in respect to which there is this relation; and as to any other business they are not partners. Partnership is but a name for this reciprocal relation. Story on Partnership, § 1; Lord WENSLEYDALE in *Cox* v. *Hick-man*, 8 H. L. Cases, 311; *Bullen* v. *Sharp*, L. R., 1 C. P., 86; *Holme* v. *Hammond*, L. R., 7 Exch., 230; *Harvey* v. *Childs*, 28 Ohio St., 319; *Eastman* v. *Clark*, 53 N. Hamp., 276; Collyer on Partnership, §§ 139, 412; *Stillman* v. *Harvey*, 47 Conn., 26.

Between the parties themselves this relation of principal and agent cannot exist except by their voluntary agreement. *Hazard* v. *Hazard*, 1 Story, 371; Collyer on Partnership, § 2. In the present case the finding is as explicit as lan-guage can make it that Farrel and Babbott did not intend to become partners. It says:—" No paper was ever signed by or between Farrel and Babbott alone. No conversation ever took place in which it was stated in words that Farrel and Babbott were partners or were to form a partnership. No firm name was ever mentioned. No suggestion that either had used or could use the name or the credit of the other. Neither ever understood, intended or thought that a partnership existed or should exist." And in addition to this there is the express declaration of Babbott to his coun-sel—apparently after Farrel had written to him that he, Farrel, had stopped all work on the machine—that he did not believe there was any partnership between them. This part of the case is not pressed and we need not pursue it.

A partnership as to third persons sometimes arises by op-eration of law even against the intention of the parties; and this happens either because the contract which the par-ties have entered into in law makes each the principal and agent of the other, or because by a course of dealing they

have shown that such was the real relation between them. Such were the cases of *Parker* v. *Canfield*, 37 Conn., 250, and *Citizens Bank* v. *Hine*, 49 Conn., 236. It is laid down in *Everett* v. *Chapman*, 6 Conn., 347, that where the terms of the agreement and the facts are all admitted, whether or not a partnership existed is a question of law for the court to decide. The plaintiff claims that from the facts found by the Superior Court it does appear that Farrel and Babbott were partners *quoad* third persons notwithstanding their intent not to be partners. The facts from which the partnership is claimed to arise are mainly the exhibits one, two and three; and of these exhibit two is the only one important. All the other facts derive their significance solely from the construction that is to be put on this exhibit.

Exhibit two purports to be no more than an agreement between the Cook Ice & Refrigerating Company, party of the first part, and Franklin Farrel and William M. Babbott, party of the second part, by which the party of the first part, being the owner of patents therefor, grants to the party of the second part the exclusive right to manufacture and sell refrigerating machines and apparatus for refrigerating, as described in the patents, throughout the United States for the full term for which the patents were granted. And in consideration of that grant the party of the second part undertakes and agrees with all diligence and dispatch, and without expense or charge to the party of the first part, to manufacture a refrigerating machine under the patents, and, for the purpose of aiding and benefiting the business intended in the agreement, to run the machine for at least two months subsequent to its completion. The party of the second part also agrees to use its best endeavors to create a public demand for the machines and to manufacture machines to supply any *bonâ fide* order therefor; and agrees to pay to the party of the first part an amount equal to one half of the gross profits accruing therefrom. There are other provisions in the agreement, but all having reference to the duties and obligations of the parties thereto.

That such a contract as this does not make the parties—that is, the party of the first part and the party of the second part—partners, is settled by abundant authority. It only provides a way in which the party doing the work is to be paid for its services. *Chase* v. *Barrett*, 4 Paige, 148.

The only relation of Farrel and Babbott that appears by this agreement is that of joint contractors to manufacture refrigerating machines for the Cook company. There is no suggestion in it that either is, or is to be, the agent of the other. It does not attempt to provide in what way Farrel and Babbott, as between themselves, are to carry out their joint undertaking. A community of interest does not make a partnership. *Loomis* v. *Marshall*, 12 Conn., 77 ; *Porter* v. *M' Clure*, 15 Wend., 186. Thus tenants in common of land are not partners. *Calout* v. *Aldrich*, 99 Mass., 74. In *Oliver* v. *Gray*, 4 Arkansas, 425, it was holden that two persons, joint owners of a horse, were not partners in respect to a contract for its keeping. *French* v. *Styring*, 2 Com. Bench, N. S., 357, was a case where two men owned a race horse which they entered in a race and won a prize. It was held that they were not partners as to that money. In *Hawkins* v. *McIntyre*, 45 Verm., 496, the defendant contracted to finish off a church for the sum of $4,500. Afterwards he agreed with the plaintiff that they should work together in doing the job, each working himself, the work of each to offset that of the other, and the expense of materials and of other work to be deducted from the amount and the balance to be divided between them. It was held that they were not partners. In the case above cited, *Loomis* v. *Marshall*, 12 Conn., 77, *B* was the owner of a satinet factory. *A* agreed with *B* to furnish all the wool that should be needed at the factory for two years, which *B* agreed to manufacture into cloth, the net proceeds of the cloth, after deducting the incidental charges of sale, to be divided so that *A* should have fifty-five per cent and *B* forty-five per cent. It was held that there was not a partnership as to third persons.

It probably could be inferred that Farrel and Babbott were to divide between themselves whatever was left, if

anything, after paying the Cook company. But a partnership, even as to third persons, is not constituted by the mere fact that two or more persons participate or are interested in the net proceeds of a business. 1 Lindley on Partnership, 24; *Holme* v. *Hammond*, L. R., 7 Exch., 230; *Loomis* v. *Marshall*, *supra; Ex parte Tennant*, L. R., 6 Ch. Div., 303; *Bullen* v. *Sharp*, L. R., 1 C. P., 86.

Mr. Farrel was a manufacturer of machinery of long and wide experience. He was at the head of a company in Ansonia, in this state, engaged in manufacturing machinery and employing four or five hundred hands. Work on a refrigerating machine was begun promptly at the factory in Ansonia under the supervision of Mr. Cook, the patentee, and with the aid of one David Smith and of one Greene, but with no success. " The machines broke down and proved so faulty and imperfect in their nature, and the business in all respects so unsatisfactory, as not to justify or warrant proceeding. Not a dollar's return in any form was ever received from the business or venture." In the language of the finding it was " only failure after failure." On September 22d, 1879, Farrel wrote Babbott that he had stopped all work on the machine until he could see him. Work did stop at Ansonia at that time and was never resumed. About November 1st, 1879, the Cook company gave Farrel notice to annul the contract with them as by its terms they had a right to do; which notice Farrel at once communicated to Babbott. Prior to the stopping of the work on the machines no act had been done by Babbott or by Farrel in which either had assumed to act for or to bind the other. Every thing they had done in carrying out their contract with the Cook company had been done by them jointly.

There was no writing, and there was no course of conduct prior to that time from which any one could be led to believe that these three men were partners. It was subsequent to this time that Babbott commenced and continued in New York the series of acts from which the plaintiff claims " that the court erred in not holding, ruling and deciding that the defendant Farrel was a partner with the said Babbott as to

and against third parties, especially as to and against the plaintiff."

A person who holds himself out as a partner, or permits others to do so, is liable as such to third persons who have given credit to the firm upon the faith of his connection with it, or who knew of such holding out.   The liability in such cases is predicated upon the doctrine of estoppel, and in order to charge a person on that ground it is not enough to show that he was represented by others to be a partner, or that his name appeared in the firm ; it must be shown that he *knew* that he was being held out as a partner and that he assented thereto, or facts from which assent can be fairly implied.   *McBride* v. *Protection Ins. Co.*, 22 Conn., 259; *Buckingham* v. *Burgess*, 3 McLean, 364.

It is always a question of fact whether or not there has been such a holding out as to estop a party from denying the partnership.     *Wood* v. *Duke of Argyle*, 6 Man. & Grang., 928 ; *Lake* v. *Duke of Argyle*, 6 Queen's Bench, 477.   And so the decision of the Superior Court is conclusive unless there is some error in its proceedings.   Upon an examination of this part of the case we are satisfied that the result to which the court came was fully required by the facts.

In May, 1879, while the parties were at work at Ansonia endeavoring to construct a refrigerating machine, and also were seeking to find or to create a demand for the machines when they should be ready, one F. L. Babbott, a brother of W. M. Babbott, called on a Mr. Blackwell of Blackwell & Co., warehousemen in Clarkson street, New York, with reference to furnishing them with a machine ; and on the 29th day of July following W. M. Babbott entered into an arrangement with Blackwell & Co., as shown by exhibit four.   It was explained to Blackwell that the machine was to be built by Franklin Farrel of The Farrel Foundry Co., at Ansonia, Conn.   At that time there was no machine or apparatus in condition to be set up, and as none was ever completed nothing was done under that arrangement.

" The first knowledge that Mr. Farrell had that any use was being made of his name or credit in any form was about

January 1st, 1880, when a three months' note dated October 22d, 1879, signed 'Franklin Farrel & Co.,' payable at Ansonia National Bank, was brought to his attention a few days before it fell due by the cashier, who asked him what he knew about it. Up to that time he had never learned that there was any claim to a partnership with him made by Babbott. He knew nothing of Blackwell except as above stated, never saw him until long after, was never at Clarkson street, and had no knowledge of any business done there. He had no knowledge of any transaction with Morgan & Herrick and had never heard of that firm until the notes in suit matured and were demanded and protested. He did not know that Smith was in New York, and could not find or meet Babbott there." Such is the finding, and it is added that he knew nothing of the Delamater Iron Works or that Babbott had any dealings with it. It appears then that the only fact which the defendant knew was that some one had wrongfully used his name on that note. It does not appear that at the time he knew that Babbott was the man. Inferentially it would seem that he did not know, for it is stated that he could not find Babbott in the city. But without pausing to remark on the dearth of knowledge the defendant had of Babbott's doings, we pass to another feature in this part of the case.

A party setting up an estoppel by conduct is bound to the exercise of good faith and due diligence to know the truth. Bigelow on Estoppel, 480; *Moore* v. *Bowman,* 47 N. Hamp., 499; *Odlin* v. *Gove,* 41 N. Hamp., 465.

When Babbott began his operations with Morgan & Herrick he showed them a copy of the contract with the Cook company and also a letter from Farrel in which occurred the words—"I have concluded to go on with the business," accompanied with statements that he and Farrel were partners. They were told that the goods were to be used in the manufacture of a refrigerating machine by Franklin Farrel & Co. at Clarkson street, New York city. They seem not to have been satisfied with the terms of that contract nor with the statements that were made to them, for

they made inquiries of the Delamater Iron Works, of which Farrel knew nothing, and of the mercantile agencies of Dun, Barlow & Co. and of Bradstreet & Co. From these agencies they were able to learn nothing as to any firm of Franklin Farrel & Co., who composed it, or as to its responsibility, or that there was any such firm at all. If Babbott and Farrel had been partners by virtue of the contract with the Cook company, they had been such since the 22d day of March, 1879. The absence of the name of any such firm from these mercantile agencies was a most significant circumstance. These agencies made known to Morgan & Herrick all about Franklin Farrel and his responsibility. These agencies could tell, and presumably did tell, where Farrel lived and in what business he was engaged ; that he was a man of large means, a large manufacturer of machinery, having a large factory and employing many hands in that kind of work. From this information Morgan & Herrick would know that the manufacture of a refrigerating machine would be in the exact line of work Farrel was doing at his own factory in Ansonia, Conn. That such a man, having such facilities, was represented to be carrying on the manufacture of a refrigerating machine in a warehouse in Clarkson street in the city of New York, and that he was doing it on credit, would be certain to excite inquiry in the mind of any prudent man. Why did not Morgan & Herrick inquire further? Mr. Farrel was a manufacturer in Connecticut, not in the city of New York. In a manufacturing partnership the place where it was to be carried on would be likely to be a controlling feature. For such work there must be machinery to use, and power to run it, and men to operate it. All these Mr. Farrel had in Connecticut, and none of them in New York. The court had judicial knowledge that Ansonia was easily accessible from New York city by railway, that there was frequent communication by mail, or that the telegraph might have been used and a reply obtained in half an hour and at trifling expense. Wharton on Evidence, § 339. When so many circumstances called for inquiry, and with all these means by which inquiries could have been satisfied, and when

none of them were used, we cannot hold that the plaintiff's assignors exercised good faith or due diligence to know the truth.

On the trial the plaintiff introduced a large number of letters and postal cards which had passed between Farrel and Babbott for the purpose of showing that they were partners in the refrigerating business. The defendant claimed that these letters or some of them had reference to other matters and not to the refrigerating business, and to show this offered other letters and postals that had passed between them. To these the plaintiff objected, but the court admitted them solely for the purpose named. That letters which had passed between these men might tend to show that they were partners in any business is very obvious, and that other letters on the same or a kindred subject might modify or contradict the first ones is equally obvious. The real relation between the parties could best be shown by the whole correspondence, not by a part of it.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.