## THE UNITED STATES WOOD PRESERVING COMPANY *vs.* JOHN H. LAWRENCE ET AL.

Third Judicial District, New Haven, June Term, 1915.

THAYER, RORABACK, WHEELER, BEACH and BENNETT, Js.

Having formed a joint-stock corporation by the name of *Lawrence & Gaynor, Incorporated,* to engage, among other things, in the business of street paving, the defendant Lawrence, who alone was experienced in that work, acting as agent and manager of the corporation, wrote to the plaintiff requesting it to ship 7,600 square yards of wooden paving blocks, and signed the letter "Lawrence & Gaynor, John H. Lawrence." A few days later the plaintiff agreed to ship the blocks, but by way of security insisted upon getting an order on the Connecticut Company, upon whose tracks the blocks were to be used, requiring it to pay the plaintiff each month for the number of square yards of block actually laid; such an order was subsequently given by the paving corporation to the plaintiff, and the plaintiff was duly paid by the Connecticut Company for all the blocks used upon its tracks. It happened, however, that 1,440 square yards of the block furnished by the plaintiff were not used in that contract, and these were by mistake appropriated and used by the city of Bridgeport in its paving operations. The paving corporation became insolvent, and the plaintiff, in an action to recover for the remaining part of the blocks, sought to charge the defendants as partners, contending that if Gaynor was not in fact a partner he was estopped from denying the existence of a partnership in the purchase of the blocks in question. *Held:*—

1. That the circumstances disclosed by the evidence and the facts as found by the trial court, furnished no basis for an implication of law of a partnership between the defendants; nor did they justify the conclusion, relied upon by the plaintiff, that Gaynor had permitted himself to be held out by Lawrence as a partner in any of the transactions therein referred to.

2. That even if it were to be assumed, upon the facts found, that the defendant Gaynor had permitted himself to be held out by Lawrence as a partner, the plaintiff was certainly in no position to urge that fact as a basis of estoppel against him, since it affirmatively appeared not only that the plaintiff had no knowledge of any representations of Lawrence tending to show a partnership, but also that it did not sell and deliver the paving blocks in reliance upon the existence of any such supposed relation between the defendants, but trusted solely to the order upon the Connecticut Company which it had demanded as a condition of the sale.

United States Wood Preserving Co. *v.* Lawrence.

A contract made in behalf of a non-existent corporation may result in a joint liability upon the part of those undertaking to act for it; but if so, it would be because they had falsely held themselves out to be agents of a principal which did not exist, or because they, having no authority to make the contract, would be presumed to have intended to bind themselves.

A person who holds himself out as a partner, or permits others to do so, is liable as such to third persons who give credit·to the firm upon the faith of his connection with it, or who know of such holding out.

Argued June 8th—decided July 27th, 1915.

Action to recover a balance due for wooden paving blocks alleged to have been sold to the defendants as partners, brought to and tried by the Superior Court in Fairfield County, *Burpee, J.;* facts found and judgment rendered in favor of the defendant Gaynor, who alone appeared, from which the plaintiff appealed. *No error.*

The finding shows the following facts: Early in the year 1913 the defendants, Lawrence and Gaynor, together with one Waldo, agreed with each other to form a corporation for the purpose of carrying on a general contracting business, to be known as "Lawrence and Gaynor, Incorporated," to be located in Bridgeport; and they instructed an attorney to prepare for them the necessary papers of incorporation and organization.

Soon afterward the city of Bridgeport advertised that sealed proposals for paving certain streets would be received by its paving commission at 8 P. M., March 31st, 1913, and that the bids would be publicly opened at that time. On March 30th, 1913, the defendants and Waldo agreed that they, acting in behalf of the proposed corporation, would make proposals and bids for a certain part of said paving, it being then understood by them that the paving would not be begun until some time in the summer, and after the proposed corporation would be perfected and ready and able to go on with the work. Neither Gaynor nor Waldo had any experience or knowledge concerning

such matters, and the preparation and presentation of the proposals and bids and the securing of the contract was left entirely to Lawrence, who was believed to be familiar with such business. Lawrence prepared the proposals and bids, signed them "Gaynor & Lawrence, Bidder," and submitted them on March 31st, 1913. Neither Gaynor nor Waldo saw them, or knew anything of their contents, or that Lawrence had so signed them, before they were submitted. Lawrence, on the day of their submission, informed Gaynor that it would be necessary to deposit a certified check with the proposals and bids, and Gaynor procured such a check and gave it to Lawrence for such purpose. The proposals and bids submitted by Lawrence were accepted, and contracts for doing the work were signed by him "Gaynor & Lawrence, John H. Lawrence," on April 9th, 1913. In the bonds accompanying these contracts the principals were described as "Edwin G. Gaynor and John H. Lawrence, doing business as the firm of Gaynor & Lawrence, of said Bridgeport, as principal," and the bonds were signed "Gaynor & Lawrence per J. H. Lawrence." It did not appear that the plaintiff knew anything concerning these bonds or the contracts which they were given to secure. On the day following the acceptance of the bids Gaynor saw in the newspapers that the successful bidder was "Gaynor & Lawrence," and understood that by that name was meant and intended the proposed corporation; and on the same day the certified check was returned to him, and thereby he knew that the bid submitted by Lawrence had been accepted.

At about the same time the plaintiff contracted with the city to supply it with the wood paving blocks to be used in paving the city's part of the streets under the contract, and, learning that Lawrence had submitted the bid which had been accepted for laying the same,

and believing that the contractor who had the city's contract would obtain a contract from the Connecticut Company, which had a street railway laid through the street which was to be paved and under the law was bound to pave a portion of the street, asked Lawrence, if he should get this contract, to buy the paving blocks required for it from the plaintiff. Prior to this time the plaintiff had never heard of any persons doing business under the name of Gaynor & Lawrence or Lawrence & Gaynor. On May 15th an agent of the plaintiff had an interview with Lawrence on a street in Bridgeport about supplying the blocks which would be needed in laying the pavement for the Connecticut Company, and questioned Lawrence concerning his financial condition, and Lawrence answered that he had no money himself, but that he was "going to ally" himself with Gaynor, whose father had money, or could raise money enough. The agent replied that that was not good security for payment, and that he would not sell any blocks unless he obtained an order on the Connecticut Company to pay the plaintiff directly for the number laid each month. No agreement was then made.

On April 16th, 1913, a certificate of incorporation of the corporation to be known as "Lawrence & Gaynor, Incorporated," was signed and sworn to by Gaynor and Lawrence and another incorporator, and was deposited in the office of the Secretary of State, and by him approved on April 17th, 1913. On June 4th, 1913, a contract, signed "Lawrence & Gaynor, John H. Lawrence," was made between the Connecticut Company and Lawrence & Gaynor to supply the blocks and do the work of paving for the Connecticut Company's part of the street which was to be paved. It was a part of the original understanding and agreement between the defendants and Waldo, to obtain this contract, in connection with those with the city, for and in behalf of

the proposed corporation, to be carried out by it for its benefit and profit. They knew that Lawrence finally obtained the contract, but did not know its terms, or how it was signed, but supposed that he had signed it, and those with the city, as agent for the proposed corporation. On June 7th, 1913, a certificate of organization of Lawrence & Gaynor, Incorporated, was signed and sworn to by Gaynor and Waldo, and on the 9th day of June, 1913, it was deposited in the office of the Secretary of State, and by him approved.

Lawrence, being the only one of the stockholders of the corporation who had any experience or knowledge of the business which it was organized to carry on, was intrusted with the exclusive power and duty of managing its affairs and securing and making its contracts. On June 10th, 1913, Lawrence, as agent and manager of the corporation, wrote to the plaintiff a letter ordering 7,600 square yards of wood block at the plaintiff's quoted price of $1.85 per square yard f. o. b. Bridgeport, and signed the letter "Lawrence & Gaynor, John H. Lawrence." The letter was written on paper having the heading, "Lawrence & Gaynor, Engineering Contractors, Bridgeport, Conn.," which was part of a large quantity which Lawrence had printed without the knowledge of Gaynor or of Waldo, and on which, because of ignorance of the law, he had omitted the word "Incorporated." Gaynor did not see these letter-heads until long after Lawrence had procured them, and then remarked to him that that was not the right name, and Lawrence replied, "Well, they are printed, and we may as well use them."

On the 19th day of June the plaintiff, by letter, accepted the order for 7,600 yards of block, saying in the letter, "the only thing necessary now for you to do is to send us an order on the Connecticut Co. to pay us each month for the number of yards of wood block laid by

you on the monthly estimates at $1.85 per yard, less the freight."

About the middle of July Lawrence left Bridgeport and abandoned work under the city contract, which had but just begun, and thereupon Gaynor assumed the management and control of this work and all the business of Lawrence & Gaynor, as president and manager of the corporation, and carried out the contracts with the city. On July 29th the plaintiff delivered the blocks contracted for on June 19th, to Lawrence & Gaynor, Incorporated, which laid a portion of the same for the Connecticut Company under the supervision of Gaynor and carried out the contract with that company. The latter company, acting on an order given by the corporation called Lawrence & Gaynor, paid the plaintiff from time to time, for and in the name of the corporation, for the number of blocks actually laid by it for the Connecticut Company at the rate of $1.85 per square yard. At the completion of the contract 1,440 square yards of the block furnished by the plaintiff remained unused and not paid for. The city of Bridgeport, by mistake, took and used these left-over blocks in its paving operations, and when its attention was called to the matter acknowledged its willingness and readiness to pay for the blocks at the rate of $1.85 per cubic yard. Gaynor, on April 29th, 1914, presented a bill to the city for these blocks, in the following form: "Lawrence & Gaynor, Engineering Contractors, Bridgeport, Conn. Sold to City of Bridgeport, Connecticut, 1,440 sq. yds. United States Wood blocks at $1.85—$2664.00." The name of the Lawrence & Gaynor corporation had been changed to Gaynor & Lambert, Incorporated, about September 5th, 1913, and the corporation is now insolvent.

The plaintiff did not know in what manner Lawrence signed the contract with the Connecticut Company on

June 4th, or of any instance or time when either of the defendants had represented or held out in any manner to any person that they were in partnership. Nothing was said or done by either defendant which was intended to or did in fact deceive the plaintiff, or cause it to believe that there was any partnership, or cause any loss or injury to it. It did not sell and deliver the paving blocks to Lawrence & Gaynor in trust and reliance upon their joint or individual credit and pecuniary means, or upon any supposed partnership, or with any care or concern whether the name Lawrence & Gaynor indicated a partnership or a corporation, but trusting and relying solely upon the order given to the Connecticut Company to make payment for the blocks, as they were used, directly to the plaintiff. It did not appear that there was any misrepresentation or bad faith by any one, or that either of the defendants had held themselves out to any one, either generally or specially, as a partnership. The defendants were never partners in business by agreement. Lawrence wrote the letter of June 10th to the plaintiff with full authority to represent and bind the corporation usually called Lawrence & Gaynor, and with the purpose to bind it only; and he omitted to use the word "Incorporated," or "Inc.," only because he did not know at the time that it was necessary or proper to use that word as a part of the corporate name.

*Sanford Stoddard* and *Philo C. Calhoun,* for the appellant (plaintiff).

*Edward J. McManus,* for the appellee (defendant Gaynor).

THAYER, J. The defendant Lawrence, having as agent and manager full authority to act for a corporation then existing in Bridgeport under the name

"Lawrence & Gaynor, Incorporated," on June 10th, 1913, ordered of the plaintiff by letter a quantity of wooden blocks, and signed the letter "Lawrence & Gaynor, John H. Lawrence." The letter was written upon paper having the heading "Lawrence & Gaynor, Contracting Engineers." He wrote with the purpose to bind the corporation only, and omitted the word "Incorporated" from the signature through ignorance of the law. The plaintiff accepted the order and delivered the blocks to the corporation, which is now insolvent. The defendants were members of the corporation, and the plaintiff by this action seeks to hold Gaynor, as a partner with Lawrence under the firm name Lawrence & Gaynor, for the balance due on the contract. Lawrence was not served with process and did not appear to defend.

The statement of facts shows the circumstances under which the order was given. The court has found that the defendants were never, by agreement, partners in business. The plaintiff claims that upon the facts found they were partners by implication of law, and if not, that Gaynor by his acts is estopped to deny that, as to the plaintiff, he was the partner of Lawrence in the purchase of the blocks in question.

In *Morgan* v. *Farrel*, 58 Conn. 413, 422, 20 Atl. 614, it is said that a partnership as to third persons sometimes arises by operation of law even against the intention of the parties; and that this happens either because the contract which the parties have entered into, in law makes each the principal and agent of the other (as in *Parker* v. *Canfield*, 37 Conn. 250, and *Citizens National Bank* v. *Hine*, 49 Conn. 236, when the contracts called for a sharing of the profits of the business by the parties), or because by a course of dealing they have shown that such was the real relation between them. The liability in the latter case, as where a person

holds himself out as a partner, is stated in *Morgan* v. *Farrel*, 58 Conn. 413, 426, 20 Atl. 614, to be predicated upon the doctrine of estoppel.

There was nothing in the arrangement made by the defendants in the present case from which the law will imply a partnership between them. There was no agreement to enter into any contract in behalf of themselves, but only in behalf of the proposed corporation. Proposals and bids were to be made in its behalf, which, if accepted, were to result in contracts which would not, as contemplated, be performed until long after the corporation would be organized. It may be that, if such a contract were made by them in behalf of a non-existent corporation, a joint liability on their part might result; but this would be because they had falsely held themselves out to be the agents of a corporation which did not exist, or because they would be presumed, having no authority to make the contract, to have intended to bind themselves. 1 Thompson on Corporations (1st Ed.) § 416; *Johnson* v. *Smith,* 21 Conn. 627, 634.

The plaintiff says that in fact contracts were made by Gaynor & Lawrence as partners with the city before the corporation was organized, and that the court erred in overruling the plaintiff's claim that this was so. Upon the finding, Lawrence had no authority from Gaynor to make such a contract, and, if he attempted to make one, it was not binding upon Gaynor unless he ratified or assented to it, which he did not do. The court finds that Gaynor had no knowledge of the terms of the contract, or the way in which it was signed, and there is nothing in the facts found to indicate the contrary, except the fact that Gaynor at some time knew that Lawrence had letter-heads printed reading "Lawrence & Gaynor, Contracting Engineers," which he informed Lawrence was wrong, and the fact that, after

the contracts were completed, Gaynor used one of these letter-heads in making out a bill to the city in the name of Lawrence & Gaynor for the blocks which are in question in this action. These were facts proper to be considered in determining what the contract was between the defendants, and whether Gaynor ratified or accepted the contract as made by Lawrence with the city. They were by no means conclusive of the fact of such a ratification. Doubtless the usual way of speaking of the corporation, both when proposed and after it was organized, was as Lawrence & Gaynor. Whatever the reason for Gaynor's presenting the bill as he did after the city had mistakenly used the blocks, the court has found that he had no knowledge, until several months after the contracts were signed, of the contents of the contracts or the manner in which they had been signed, and supposed that they had been signed properly by Lawrence as the agent of the corporation. Upon the facts found the court properly held that no contract with the city which was binding upon Gaynor as a partner with Lawrence, had been established by the plaintiff.

There is less ground for claiming that he was by operation of law a partner as to the contract with the Connecticut Company and as to that with the plaintiff. The corporation had been incorporated, but not organized, when the contract was made with the Connecticut Company, and had been organized when the contract with the plaintiff was made. In neither case did Lawrence have any authority from Gaynor to make these contracts otherwise than for the corporation, and it was Lawrence's intent to bind, not a partnership, but the corporation, as he was authorized to do. If it be conceded that there was in fact no prior existing partnership under the name Lawrence & Gaynor, it will hardly be claimed that the law will imply one from the fact that the word "Incorporated" was mistakenly

omitted in signing the name of the corporation to the contract.

A person who holds himself out as a partner, or permits others to do so, is liable as such to third persons who give credit to the firm upon the faith of his connection with it, or who know of such holding out. *Morgan* v. *Farrel,* 58 Conn. 413, 426, 20 Atl. 614. The plaintiff insists that Gaynor either held himself out to the city of Bridgeport as a partner with Lawrence, or permitted Lawrence to do so, in making the contracts with the city, and that the plaintiff knew that the city contracts were made with Lawrence and Gaynor and was entitled to presume that the partnership continued. If we assume that what was done by Lawrence constituted a representation by Lawrence that Gaynor was his partner in that transaction, all that Gaynor knew of the transaction, tending to show permission or acquiescence upon his part was the fact, announced in the newspapers, that the successful bidder was "Gaynor & Lawrence." The finding shows that he did not see the bids or contracts until several months after the contracts were made, and thus necessarily after the corporation had been organized; that he did not know how they had been signed, but supposed that they had been signed properly by Lawrence as agent for the corporation. The fact that he saw in the newspaper that the contract was awarded to Gaynor and Lawrence would not call for an investigation on his part to learn whether the bids or contracts had been properly signed, and his failure to do so would not be sufficient under such circumstances to charge him with permitting himself to be held out as a partner of Lawrence. It might be different in case similar conduct on the part of Lawrence had continued for a considerable period of time, for knowledge may be presumed from a course of conduct. In a single instance where it is found that there was

absence of knowledge in the party to be bound, mere silence on the latter's part is not enough to constitute permission or acquiescence.

But were permission to be presumed from Gaynor's conduct, the other facts are such that he is not estopped to deny liability as a partner. The court finds that the plaintiff did not sell and deliver the paving blocks relying upon the joint or individual credit of Lawrence and Gaynor, or upon any supposed partnership between them. It also appears that after the plaintiff knew of the city's contract, made before it contracted with Lawrence to furnish the paving blocks, it inquired of Lawrence about his finances, and was then told that he had no money, but that he was "going to ally" himself with Gaynor. This was a representation that no partnership then existed, and what was done and said at that time by the plaintiff and Lawrence justifies the finding that the plaintiff sold the blocks not relying upon any partnership which it supposed existed because of the city contract. Anything done by Gaynor after the contract with the plaintiff was made could not have influenced the plaintiff when it accepted the order and closed the contract for the blocks. His claimed silent acquiescence when Lawrence indicated that he would use the letter-heads after Gaynor told him the name was wrong, and his rendering the city a bill for the blocks which it had taken by mistake, relied upon by the plaintiff as acts of acquiescence, could not, for this reason, have been relied upon by the plaintiff in making the contract. The court, therefore, properly overruled the plaintiff's claim that Gaynor was estopped from denying that a partnership between him and Lawrence existed at the time its contract was made.

There is no error.

In this opinion the other judges concurred.