[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiffs, Mario Capozzo [Capozzo] and David Buonome [Buonome] seek an accounting of the profits, pursuant to Section 34-60 of the Connecticut General Statutes derived from contracts for electrical work for the "DiNardo Brothers" under [Exhs. A, B, C, and D]. The DiNardo Brothers [DiNardo] was a customer of the Defendant, Anthony Boni, [Boni]. Boni had operated under the partnership name of B C Electric Company. Although Nunzio Cimino, [Cimino] his original partner left the B C Electric Company [B C] beginning of 1989, Boni continued to operate under the original company name. Cimino held an E1 license and Boni held an E2 Journeyman's license. Exh. A and B are signed by Boni only, January 16, 1989, and April 6, 1989 respectively. Exh. C and D are signed September 20, 1989 by Boni and Capozzo.
Under Connecticut law Boni's E2 license does not allow him to obtain electrical permits. Both Capozzo and Buonome hold E1 licenses which allow them to obtain the necessary permits to perform the electrical work recited under Exhs. A, B, C and D. It was the Buonome license which was used to obtain the permits to perform the work under contracts A, B, C, and D. [Exh. I].
Capozzo testified that prior to starting the job under Contract A discussions took place with Boni concerning the contract. Boni stated that they would do the job for DiNardo at the Meyers Building for $103,000. Boni had fixed the price but Capozzo felt it was low. Boni agreed to pay Capozzo and Buonome $750.00 per week. Capozzo felt he and Buonome became liable as partners under the contracts. When he reviewed Exh. B he felt it should be higher. Capozzo ordered supplies from two supply houses under the B C Company name. Capozzo testified that Boni indicated since his name started with C they could operate under B C Electric Company. Capozzo signed for supplies and considered himself liable. Capozzo asserts that DiNardo was introduced to him by Boni as his partner and in fact when payments were not CT Page 9605 forthcoming he and Boni went to get certain checks. The testimony revealed that Boni didn't even have a truck at the start of the job and only minimal tools. They were into the job three to four weeks before Boni paid them their $750.00 per week. Boni opened the bank account from which they operated. Capozzo testified that the agreement with Boni was to each draw $750.00 per week and to divide the profits at the end of the job three ways. Capozzo testified that since he and Buonome had started a corporation David Mario Electric Corporation for accounting purposes for he and Buonome, they had their checks written to the corporation "for convenience." Boni originally issued the checks to Capozzo and Buonome without any notations. Only after a return of the cancelled checks did he write on the original check the notation "Sub Work." [Exhs. J and K].
Boni testified that he knew Buonome before the jobs and told him he might get a big job and only that he would pay he and Capozzo $750.00 per week. He further testified that he would pay a bonus at the end of the job but no amount was specified. Boni operated as though everything was his under the agreements such as writing the checks and paying the bills.
Boni testified that he paid $47,600 plus for the labor of Buonome and Capozzo. Buonome and Capozzo had no set hours for their $750.00 payments and each payment was for the amount of the draw that Capozzo testified to.
No written subcontract was ever executed by the parties. It was all upon an oral agreement. Under cross examination of Boni he admitted no 1099 forms under the IRS regulations were issued and he was going to pay $1500 per week so long as they have work. All the work in issue started February 1989 and they had to prepare 3 weeks to get ready apparently before Cimino left the original partnership.
The Plaintiffs cite Block v. Administrator of Unemployment Compensation, 16 Conn. Sup. 444 (1950) which holds in determining the existence of a partnership the trier should look to "(1) the intention of the parties to be partners; (2) that they held themselves out to the public to be partners; (3) that they participated in the management of the business; (4) that they had powers to bind the business; (5) that they shared in profits; (6) that they had the exposure to losses; (7) that they furnished certain capital to the partnership during its time that it was doing the job for the DiNardo Brothers. CT Page 9606
Boni in his memorandum cites Paollela v. Paollela,42 Conn. Sup. 184, 186 (1992) which held:
 "It cannot be said that any one fact is determinative of the relationship, the essential question being whether, upon all the facts, `such a relation exists between them [the partners] that each is as to all the others, in respect to some business, both principal and agent.' Morgan v. Farrel, 58 Conn. 413, 422; Samstag Hilder Bros. v. Ottenheimer, 90 Conn. 475, 478."
From all the credible evidence the court can only conclude that there was a partnership. The inconsistent reasoning for paying $750.00 per week without accountability for time and work is a strong factor. Boni could not have performed the job under his license. The court does not accept Boni's reason for Capozzo accompanying him when making demands for their payments or that he signed the Exhs. C and D as a witness. He certainly would have to explain away his relationship if suit or a claim was made against Capozzo and Buonome. Boni wanted to continue his relationship with DiNardo and needed an E1 license. Boni perhaps did not want to let DiNardo know he didn't have an E1 license so he substituted Capozzo for Cimino.
The court concludes that Boni wanted to continue as a front man with the other two as his workers. Capozzo and Buonome expected to be liable for the jobs or any other consequences. Capozzo and Buonome intended to be partners from the start. No bonuses were paid to them.
Boni by way of counterclaim had asserted that although he denied the existence of a partnership that Buonome and Capozzo breached their fiduciary duties in one or more ways none of which were supported by any evidence at trial nor was any briefed. Accordingly, the counterclaim is deemed abandoned.
Judgment enters in favor of the Plaintiffs on the complaint and counterclaim.
The court further orders an accounting and any profits resulting from such an audit be distributed equally between the parties. CT Page 9607
Frank S. Meadow State Trial Referee